ROGERS
v.
BENSON.

ROGERS and others, executors of HENDERSON,

*against*

BENSON and others.

A deed by husband and wife, of their joint estate, in trust to pay all the debts of the husband, and the residue to the use of the wife, and her heirs in fee, is a valid conveyance, as being founded on a valuable and meritorious consideration; and cannot be impeached by a subsequent purchaser without notice of the trust.

Where land is conveyed to husband and wife, they do not take as joint tenants, nor as tenants in common; but are both seized of the entirety; neither can sell without the consent of the other, and the survivor takes the whole; this case not being within the provision of the state relative to joint tenancies. (*sess. 9. ch. 12. s. 6.*)

The trustee in this case was held not to be responsible to the purchaser, on the ground of any misconduct, misrepresentation, or fraud.

THE bill, filed *March* 28th, 1818, stated that *William Henderson*, the testator, died the 12th of *January*, 1812, having appointed the plaintiffs, his executors, That on the 5th of *December*, 1808, *William Houston*, to secure the payment of three thousand dollars, borrowed by him of *John Hunter*, executed his bond for that sum, payable in one year, and a mortgage to *J. H.*, on eight lots of ground in the city of *New-York*. That on the 1st of *December*, 1810, the principal of the said bond and mortgage being due, with interest, from the 5th of *December*, 1809, *J. H.* assigned the same to *W. Henderson*, the testator. That the assignment was duly acknowledged on the 12th of *January*, 1812, and registered on the 12th of *May* following, in the register's office in the city of *New-York*. That soon after the execution and delivery of the assignment, notice thereof was given to *W. Houston*, and the whole of the principal and large arrears of interest now remain due on the bond and mortgage to the plaintiffs, as executors of *W. Henderson*.

*June 6th and July 30th.*

1821.

ROGERS
v.
BENSON.

That *William Houston* died intestate, on the 13th of *March,* 1813, and no person has administered on his estate. That the plaintiffs applied to *W. Houston,* before his death, for payment of the bond, who pretended, that previous to the execution of the mortgage, he had conveyed the premises to *Egbert Benson,* in trust. That the plaintiffs' on inquiry and search, discovered a deed recorded in the office of the clerk of the city of *New-York,* on the 21st of *June,* 1812, bearing date the 6th of *June,* 1805, from *W. Houston* and his wife, to *Egbert Benson,* in fee, of the mortgaged premises, together with other lands, upon certain trusts and conditions therein expressed; which deed the plaintiffs charged to be voluntary and without any consideration; and that *John Hunter,* at the time of the execution of the mortgage to him, was ignorant of the existence of that deed; and that *W. Houston,* from the date of the deed to the time of his death, continued, with the knowledge and consent of *Egbert Benson,* in possession of the premises, and received the rents and profits, and paid all the taxes and assessments thereon; and the plaintiffs submitted, that the deed was, therefore, so far as regarded the mortgage, void. That *Mary,* the wife of *W. Houston,* died before the execution of the mortgage, and her husband being then insane, administration on her estate was granted to the defendant, *E. Benson.* The bill prayed, that the money due on the mortgage be decreed to be paid, or that the premises be sold, and the money paid out of the proceeds.

The answer of the defendant, *E. Benson,* set forth the deed from *Houston* and his wife, to him, mentioned in the bill, by which they conveyed to him, the premises mortgaged, and another lot, afterwards reconveyed, in *trust,* to sell the whole, or as much as might be necessary to pay the debts then due or contracted by *W. Houston;* and as to the residue not sold, or retained to be sold, for the payment of the debts of *Houston,* the defendant, *E. B.,* might

make leases thereof, and pay over the rents to *Mary H.*, her heirs and assigns ; and the said *Mary H.* was authorized, at any time, during her life, and if during coverture, with the consent of her husband, to revoke the trusts as to the whole or any part of the residue, after which revocation, the defendant *E. B.* should stand seized to the use of *Mary H.*, her heirs and assigns : and if *Mary H.* should not revoke such trusts, she might, whether covert or not, make a will, and upon her death, the defendant *E. B.* should stand seized to the uses of such will ; and in case she should die intestate, then *E. B.* should stand seized to the use of her heirs at law : and it was agreed that *E. B.* as to the said residue, might, at any time during the life of himself and *Mary H* convey the same to her in fee, or to such person or persons as she might appoint as her trustee in the place of the defendant, *E. B* That the lots described in the said deed, bei g parcel of certain lots held by gift and grant from *Nicholas Bayard,* (father of *Mary H.*) to *William H.* and his wife, and were so conveyed in trust to *E. B.* for the purpose of paying the debts of the said *W. Houstoun,* then remaining due and unpaid. That the defendant *E. B.* having accepted the trust, paid off the debts of the said *W. Houstoun,* mentioned and intended in the said deed of trust, with his own proper moneys, with moneys borrowed by the said *W. Houstoun,* for which the defendant joined as security, and with moneys furnished by the said *W. Houstoun ;* and he claimed a balance due to him on that account. That in *October,* 1813, the defendant *E. B.* sold three of the trust lots to *A. H. Lawrence.* That on the 7th of *December,* 18. 8, *W. Houstoun* paid to the defendant, *E. B.,* one thousand dollars, on account ; and from the coincidence of the dates of the loan by *J. Hunter,* and the said payment, he inferred, as highly probable, that the sum so paid to him by *W. Houstoun,* was part of the money borrowed of *J. Hunter,* but except such inference, the defendant was wholly ignorant how,

or from whom, *W. Houstoun* obtained the said money : That on the 29th of *January*, 1810, *W. Houstoun* paid him, *E. B.,* two thousand dollars, which two sums were all the payments ever made to him by *W. Houstoun.* That on a settlement of their accounts on the 11th of *June*, 1811, a balance was found due from *W. Houstoun* to the defendant *E. B.,* which still remained due. The defendant, *E. B.,* admitted that the trust deed was without any other consideration than as above stated ; and he denied that the same was ever, in any manner, kept secret and concealed. He stated, that the lots described in the trust deed were, and during the life time of *W. Houston*, continued to be, vacant and unoccupied, and he did not know whether any taxes or assessments had been paid on them. That *W. Houstoun* died intestate, and no person had administered on his estate. That soon after the executing of the trust deed, *Mary H.* went to *Georgia,* where she died, *August 7th*, 1806, during the life of her husband, leaving *Maria Houstoun* (since intermarried with the defendant *J. R. M.*) and *Elizabeth H.* her only issue, and who are the other defendants. The answer of the other defendants stated that *Nicholas Bayard*, on the 8th of *December*, 1797, in consideration of natural love and affection for his daughter *Mary*, the wife of *W. Houstoun*, conveyed to her and her husband, in fee, the one fifth part of all his real estate. That a partition was made between *W. H.* and his wife, and the other tenants in common of the real estate, and the lots mortgaged were conveyed in severalty to the said *W. H.* and his wife. The deed of partition was dated the 27th of *December*, 1804. That *Mary H.* never revoked the trusts contained in the deed to *E. B.,* in the residue of the lots, not sold or retained to be sold for the payment of the debts mentioned in the deed ; and that *E. B.,* therefore, on the death of *M. H.* became seized of those lots to the use of the defendants *Maria* and *Elizabeth,* in fee : and they insisted that *William H.* had not, at the time the mortgage was ex-

ecuted, any estate or interest in the premises ; and that the trust deed was made for a good consideration, and ought to be upheld for the benefit of the defendants *Maria* and *Elizabeth.*

The plaintiffs, on the 1st of *November*, 1819, filed a *supplemental* bill, in which they charged that the defendant *E. B.*, at the time *John Hunter* lent the money to *W. Houstoun*, was informed or knew of the same ; and that after the death of *Mary H.*, he, *E. B.* had frequent conversations with the person employed by *W. Houstoun* to negotiate the loan, and with the person employed by *J. Hunter* to examine the titles to the lots proposed to be mortgaged, in which conversation he, *E. B.*, gave no notice or intimation of the said trust deed ; but, on the contrary, represented *W. Houstoun* to be seized of an absolute estate in fee in the premises mortgaged. That before the execution of the mortgage, *W. Houstoun* being desirous to sell the premises, obtained the written opinion of *E. B.* as to the nature of the estate of *W. H.*, dated *May* 14, 1808, in which it is set forth, that *W. H.* had then solely the entirety of the premises ; and that at the time *W. Houstoun* was negotiating the loan of *J. Hunter*, that opinion was shown to his agent. The plaintiffs submitted, that, if the Court should be of opinion that the debt due to them, ought not to be satisfied out of the mortgaged premises, that then the defendant *E. B.* ought to be decreed to pay and satisfy the mortgage.

The defendant *E. B.*, in his answer to the supplemental bill, stated, that after the execution of the trust deed, it was discovered that there were a number of vacant lots belonging to the estate of *Nicholas Bayard*, which it was believed had never been aliened by him, and which consequently passed by his deed of gift above mentioned, and that as no person appeared to claim them, the co-donees agreed to make partition thereof between them ; and a deed of partition, bearing date the 22d day of *July*, 1806, was ac-

1821.

ROGERS
v.
BENSON.

cordingly executed by them; (except the wife of *W. Houstoun ;*) which partition was confirmed by an act of the legislature passed the 4th of *March,* 1808. That *W. Houstoun* afterwards, being desirous of disposing of the lots which fell to his share in that partition, consulted *T. A. Emmet,* and the defendant *E. B.,* as to the nature of his estate in those lots, and they gave him a written opinion, dated *May* 14th, 1808, which was set forth in the answer that it was not a *joint tenancy,* within the statute regulating convey-ances by joint tenancy, &c., and that, consequently, on the death of *Mrs. Houstoun,* her husband became entitled to the *entirety.* The defendant *E. B.* did not recollect, nor believe, that after giving that opinion, and before the loan by *J. Hunter,* he had any conversation with any person re-specting it ; and as to the other matters charged in the sup-plemental bill, he referred to his answer to the original bill.

*June 6th.* The cause, this day, came on to be heard on the pleadings and proofs.

*T. A. Emmet,* for the plaintiffs.

*Boyd* and *S. Jones,* for the defendants.

*July 30th.* The cause stood over for consideration to this day.

THE CHANCELLOR. 1. The children of *Mary Houstoun,* have a valid title to the mortgaged premises under the deed of trust of the 6th of *June,* 1805. That deed was founded on a valuable consideration, and there is nothing in the case to impeach its validity. It referred, by way of recital, to the deed of *Nicholas Bayard* to *William Hous-toun* and *Mary* his wife, of the date of the 8th of *Decem-ber,* 1797, for one equal undivided fifth part of his estate,

and to the partition deed of the date of the 27th of *December*, 1804, in which the premises contained in the trust deed were released to *Houstoun* and his wife, in fee, by the other tenants in common. The conveyance, on its face, purported to be made in consideration of the trusts declared, and which were, that the defendant *Benson* should sell the whole or such parts as might be necessary, of the estate thereby conveyed to him, to pay the debts of *William Houstoun* then due or contracted, and to hold the residue of the estate, if any, in trust for the wife and her heirs, in the manner particularly described.

This, then, was a conveyance by the wife and her husband of their joint estate, for the meritorious purpose of paying his debts, and of settling the surplus upon her and her children. The husband and wife, in this case were not p operly joint tenants or tenants in common, for they were but one person in law, and could not take by moieties. They were both seized of the entirety, and neither could sell without the consent of the other, and the survivor would take the whole. The same words of conveyance, which could make two other persons joints tenants, will make the husband and wife tenants of the entirety. This is a nice distinction laid down in the old books, and which has continued to be law to this day ; and the special provision in our statute, that no estate in joint tenancy shall be held under any grant or conveyance, unless the premises were expressly declared to pass, not in tenancy in common, but in joint tenancy, does not reach this case, for the estate of the husband and wife is not a joint tenancy. (*Litt. s.* 291. 665. *Co. Litt.* 187. *b. Bro. Abr. tit. cui in vita, pl.* 8. *Back* v. *Andrew,* 2 *Vern.* 120. *Green* v. *King,* 2 *Black Rep.* 121. *Jackson* v. *Stevens,* 16 *Johns. Rep.* 110.)

The case of *Ward* v. *Shallet,* (2 *Vesey,* 16.) is very much in point, in respect to the consideration and validity of this deed. The wife, in that case, had a contingent interest un-

der a bond given by the husband on the marriage. She had also the lease of an office left her by her father's will. She agreed, in consideration of settling part of the money arising from the sale of the office, for her separate use, during her husband's life, and afterwards for her children, to part with her contingent interest in the bond. The husband became a bankrupt, and his assignees endeavoured, by bill, to subject her separate estate. But Lord *Hardwicke* held the settlement to be good, and the deed valid against creditors, for it had a sufficient' consideration to support it, and this was her *parting with her contingent interest under the bond*, which may be a consideration as well as a certain interest. The consideration takes it out of the statute of *Eliz.* as to creditors, " to bring it within which, it must be proved, he was indebted *at the time of the conveyance*, and the contrary rather appears here." The bill was dismissed as far as it sought to impeach the deed. But Lord *Eldon*, in the case of *Lady Arundell* v. *Phipps* and *Taunton*, (10 *Vesey*, 139.) went further, and held that a purchase by a married woman from her husband, through the medium of trustees, for her separate use, might be sustained against creditors, if *bona fide*, and for a valuable consideration, *though the husband be indebted at the time.*

In the present case, the wife had a present vested interest, equal to that of her husband in the estate conveyed, and a contingent right to the whole, by survivorship; and she joined in a conveyance of the whole to pay all the debts of her husband, in consideration that the residue should be settled upon her in fee. The whole estate came to her from her father; and is it possible for a conveyance to be upheld by a more meritorious and valuable consideration? The conveyance is impeached, not by any then existing creditor, (for they were all provided for,) but by a creditor of the husband, for a debt accruing years afterwards, and after the death of the wife.

There was no existing law, that required this trust deed to be put upon record; and there are no circumstances showing that the conveyance was intended to be a secret transaction. It was as notorious as any other ordinary family settlement, and it was known to Judge *Livingston*, in 1805. The subsequent mortgagee, therefore, took a mortgage, from the husband of the trust lands, at his peril, and under the same peril that any other purchaser buys. The mortgaged premises did not, at the time, belong to the husband, but to the infant children of his deceased wife; and their vested interest could not be affected by any act of their father; nor have the plaintiffs shown any right to come in as creditors under that trust deed.

2. There does not appear to be any well-founded pretence to charge the defendant *B.*, in his individual person, or property, with the payment of the mortgage debt or any part of it. He was not guilty of any fraud, by the opinion which he subscribed, as counsel, on the 14th of *May*, 1808. The opinion was intended to refer to the lands specified in the partition deed of the 22d of *July*, 1806, and referred to in the act of the 4th of *March*, 1808, confirming that partition, and those lands were only, as the act says, "parcel of the lands heretofore of the said *Nicholas Bayard*," and were not included in the trust deed. It is true, the case as stated and which preceded the opinion, was broad enough to include the trust property, and the opinion might seem to refer to the whole property derived to *Houstoun*, and his wife, from her father.

The general description, and the want of precision in marking the property to which the opinion was intended to apply, has probably led to this controversy, and to the attempt to charge the trustee with fraud. But the case affords no reasonable ground for any inference of fraud. It is impossible that the defendant could have seriously meant that *Houstoun* might lawfully traffic with the property then held by the defendant in trust for his children; and to

suppose that he meant, by that opinion, to afford *Houstoun* the means to cheat, whenever he could find a suitable victim, would be most extravagant and groundless. The defendant had no motive for such an act of depravity ; and the charge is repelled by the intrinsic circumstances of the case, as well as by the unimpeachable character of the party.

The defendant *B.* was not responsible for the misapplication, by *Houstoun*, of his opinion to fraudulent purposes. The statement of the case to which the opinion was annexed, was carelessly drawn, and left to be applied to property to which it was not intended. But this was the act of the defendant as counsel, and not as trustee, and it would be unjust to charge him, as trustee, because his opinion. given in the way of his profession, was fraudulently misapplied by *H.* about seven months after it was given, and without the knowledge or consent of the defendant. The charge could not, in any case, affect the vested rights of the children of Mrs. *Houstoun*; nor can I consent to make the defendant personally responsible, because I believe, from the intrinsic circumstances of the case, from the answer, from the want of connection in point of time and reference between the opinion and the loan, from the absence of proof, and from the character of the defendant, that no fraud was intended, and that the opinion had, in fact, reference to the twenty-one lots contained in the second partition deed, and not to those in the trust deed. The bill must, consequently, be dismissed without costs.

Decree accordingly.