## CHARLES L. MARBURG, and others *vs.* ANN REBECCA COLE.

*Construction of a joint Conveyance to husband and wife—Specific performance of Contract for sale of land free from incumbrance—Effect of non-production of mortgage notes where the mortgage has been released of Record.*

By the common law of England which is the law of this State, except where it has been changed or modified by statute, a conveyance to husband and wife does not constitute them joint tenants, nor are they tenants in common. They are in the contemplation of the common law but one person, and hence they take, not by moieties, but the entirety. They are each seised of the entirety and the survivor takes the whole.

The Code, Art. 49, sec. 12, providing that no instrument of conveyance shall be construed to create a joint tenancy, unless it is expressly provided that the property shall be held in joint tenancy, does not affect or apply to such an estate as that conveyed to husband and wife.

Nor do the provisions of the Code, Art. 45, secs. 1 and 2, authorizing a married woman to acquire and hold property as therein provided to her separate use, at all affect the nature of the estate conveyed to husband and wife by deed to them jointly.

Hence the common law principle remains unaffected by statute.

By a contract between A. and B. the latter agreed to purchase certain real estate from A. who covenanted to make a good and sufficient deed for the property free of all incumbrances. On a bill filed against B. for a specific performance of the contract, it was HELD :

1st. That where the complainant had executed two mortgages upon the property to secure the payment of certain promissory notes therein mentioned, which mortgages had been regularly released on the record, and there was nothing to show that the notes mentioned in the mortgages were held by third persons, or that they were negotiable, the defendant could not refuse to complete the purchase because of the non-production of said notes.

2nd. That if there be a subsisting mortgage unpaid, it must be discharged and the property relieved before the defendant could be required to pay the purchase money and accept a deed from the complainant under the contract of purchase.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed by Ann Rebecca Cole against the appellants for the specific performance of a contract for the sale of a lot of ground in the City of Baltimore. The complainant claimed to be the sole owner of the property, and contracted to sell the same to the appellants, "free of all incumbrances." The defendants objected to completing the purchase on the ground that the complainant was not the sole owner of the property, and that the property was not free from incumbrances. The proceedings show that the property was conveyed to the complainant and Abraham Cole, her husband, on the 10th of July, 1872, by William L. Dallam and William M. Marine, Trustees, and George W. Perkins. The deed recited that the trustees had sold the property to George W. Perkins, at a trustee's sale; that the sale had been reported to and ratified by the Court, and that the said George W. Perkins had in fact purchased the property for the said Ann Rebecca Cole, and Abraham Cole, her husband, who had paid the purchase money therefor. The conveyance was made to the said "Ann Rebecca Cole, and Abraham Cole, her husband, their heirs and assigns, in fee."

On the 14th of February, 1878, two confirmatory deeds were made, one from the trustees to Perkins, and the other from Perkins and his wife, to Ann Rebecca Cole, her husband being then dead. These deeds were made in order to remove an objection taken by the appellants, that the trustees were not authorized by the decree under which they were appointed to convey the property to any one but George W. Perkins, he having been reported to the Court as the purchaser.

It further appeared that the appellee and her husband had made two mortgages of the property to secure the repayment of certain promissory notes, and although the mortgages appear to have been released of record, the

mortgage notes were not produced, and the appellants claimed that unless produced and cancelled, they constituted a cloud upon the title.

The appellants also alleged that there was a third outstanding mortgage upon the property which had not been released, and that the principal and some of the interest notes thereby intended to be secured, had not yet matured. This mortgage was not produced.

A replication was filed to the answer, but no evidence was taken by either party.

A decree *pro forma* in favor of the complainant was passed by the Court below (GILMOR, J.,) from which decree the defendants appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER and ALVEY, J.

*T. Alexander Seth*, for the appellants.

The deed from W. L. Dallam and W. M. Marine, trustees, and George W. Perkins to Ann Rebecca Cole and Abraham Cole, her husband, described in Complainant's Exhibit No. 1, was executed after the adoption of the Code.

Joint estates, coupled with a survivorship, are foreign to the spirit and letter of our modern jurisprudence. *Act of* 1822, *ch.* 162; 1 *Code, Art.* 49, *sec.* 12.

It is the policy of the law to disfavor estates of that description. *Chew vs. Chew*, 1 *Md.*, 171.

The estate by entireties is based entirely on the common law doctrine of the legal unity of husband and wife. During the past forty years, the unmistakable tendency of the Legislatures and Courts of the different States has been to break away from the old rule, and to recognize that division of person and property which, practically and in reason, exists between husband and wife. Legislation in the different States has not been uniform on this subject,

and the decisions of Courts are very conflicting.   We are, therefore, compelled to confine ourselves to our own Acts of Assembly, and the opinions of our own Courts.

The old law of Maryland vested goods and chattels of the wife in the husband ; but our law-makers soon effected important modifications. *Act of* 1798, *ch.* 101, *sub-ch.* 5, *sec.* 8; *Act of* 1841, *ch.* 161.

As early as 1842, we have the important provision that a married woman may become seized and possessed of any property *in her own name and as of her own property. Act of* 1842, *ch.* 293 ; *Constitution of* 1851, *Art.* 3, *sec.* 38.

The next step in the same direction was taken by the Act of 1853, chapter 245.

See also *Cooke vs. Husbands,* 11 *Md.,* 503, in which case our Court of Appeals decides that, in equity, a married woman is to be regarded as a *feme sole* in respect to her separate property. *Schindel vs. Schindel,* 12 *Md.,* 312 ; *Bridges vs. McKenna,* 14 *Md.,* 265 ; *Weems vs. Weems,* 19 *Md.,* 344 ; *Buchanan vs. Turner,* 26 *Md.,* 1 ; *Schull vs. Murray,* 32 *Md.,* 15 ; *Clark vs. Tennison,* 33 *Md.,* 89 ; *Act of* 1872, *ch.* 270 ; *Act of* 1874, *ch.* 37.

The true logical conclusion to be deduced from these decisions and Acts of Assembly is, that the common law doctrine of the unity of husband and wife is no longer tenable in this State.

If this unity of husband and wife is destroyed, then the deed created in Ann Rebecca Cole and Abraham Cole a tenancy in common ; and Abraham Cole's interest descended, at his death, to his heirs-at-law, subject to his widow's dower right.

Again : This Court has never recognized estates by entireties ; but has expressly decided (prior to Act of 1822, chapter 162,) that a conveyance to husband and wife jointly creates a joint tenancy. *Hanan vs. Towers,* 3 *H. & J.,* 147 ; See also *Craft vs. Wilcox,* 4 *Gill,* 505.

When property is mortgaged to secure the payment of promissory notes, the mortgage enures to the benefit of any

one in whose hands the notes may be, provided he is a
*bona fide* holder of them ; and the original mortgagee has
no power to release the mortgage, so as to deprive the
holders of the notes of the benefit of their security under
the mortgage. *Boyd vs. Parker*, 43 *Md.*, 182.

The notes intended to be secured by the mortgages to
Lucretia Pembroke, and to Ann M. Gorsuch, have not
been produced cancelled, nor has any satisfactory evidence
of their having been paid been offered—the release of the
mortgage to Lucretia Pembroke not even containing an
acknowledgment that the mortgage debt has been satis-
fied.

Can the appellants know to whose possession these notes
have been transferred, or whether or not they have been
paid ?   And can appellee give a clear title until the fact of
payment is proved ?   And is the fact of such payment sus-
ceptible of proof, short of the production of the cancelled
notes ?

The same objection is pertinent to the mortgage to Ella
G. Paca as regards some of the interest notes.   The prin-
cipal note secured by said mortgage is, in point of fact,
not yet due ; and appellants have no means of knowing
whether the said mortgage can now be released or not.

A mortgagee cannot compel a redemption before the
time fixed in the deed for the performance of the condition.
1 *Washburn on Real Property*, 599 ; 1 *Hilliard on Mort-
gages,* 482, *note c,* and cases there cited.

*J. T. Mason, R.*, for the appellee.

By the deed above mentioned, wherein the property was
conveyed to " Ann Rebecca Cole and Abraham Cole, her
husband, their heirs and assigns, in fee," the husband
and wife took as one person, by entireties, they being one
and the same person in law ; and, upon the death of Abra-
ham, his interest in the property terminated, and Mrs.
Cole remained seised of the whole.

This peculiar estate, which is not a joint tenancy, results from the legal unity of husband and wife, whereby the legal existence of the wife is merged in that of the husband, and the two constitute but one person in law—*vir et uxor sunt quasi unica persona;* so that if land be conveyed to A, B and C and the wife of C, C and his wife take as one person a third of the estate, and A and B each a third; so also in a conveyance to husband and wife, they take as one person, each being seized of the whole, *per tout et non per mie*, and upon the death of either, the survivor has the whole, not by *survivorship*, as in joint tenancy, for the *jus accrescendi* does not exist between husband and wife, but by virtue of the original estate

The death of one "merely produces a change in the properties of the legal person holding, and not an alteration in the legal estate holden; the loss of an adjunct merely reduces the legal person holding the estate to an individuality, identical with the *natural* person. The whole estate continues in the survivor, the same as it would continue in a corporation after the death of one of the corporators." 2 *Bl. Com.*, 182; 1 *Wash. Real Property*, (*4th Ed.*,) 332 *and* 672; *Tyler on Infancy and Coverture*, 498; *Stuckey vs. Keefe*, 26 *Penn. St.*, 399; *Bates vs. Seeley*, 46 *Penn. St.*, 248; *Johnson vs. Hart*, 6 *W. & Sar.*, 319; *Thornton vs. Thornton*, 3 *Rand.*, 179; *Rogers vs. Benson*, 5 *Johns. Ch.*, 430; *Taul vs. Campbell*, 7 *Yerger*, 319; *Feiston vs. Panott*, 5 *T. R.*, 652; *Hemingway vs. Scales*, 42 *Miss.*, 1; *Pierce vs. Chase*, 108 *Mass.*, 258; *Atcheson vs. Atcheson*, 11 *Beavan*, 485.

The common law rule, as above stated, has not been changed by the Act of 1822, chapter 162, (Code, Article 49, section 12,) which declares that "no deed, &c., shall be construed to create a joint tenancy, unless in such deed, &c., it is expressly provided that the property thereby conveyed is to be held in joint tenancy." The statute is in derogation of the common law, and should be strictly

construed.   Moreover, it refers solely to *joint tenancies,* and the estate of husband and wife is not a joint tenancy, but a tenancy by entireties --a different estate altogether, and one not within the language, the intent or the reason of the statute.

The object of this statute was to remedy the mischief arising from failure of joint tenants to make partition during life, whereby the heirs of the one first dying were deprived of their inheritance, but husband and wife could not make partition.   The statutes of partition, 31 and 32 Henry VIII, (*Alexander's British Statutes,* 311 *and* 332,) have always been held not to apply to the estate of husband and wife.

In *Craft vs. Wilcox,* 4 *Gill,* 505, Judge ARCHER said that the conveyance to husband and wife was "unaffected by the Statute, (Act of 1822, ch. 162,) because it did not create a joint tenancy." In that case, however, there was a limitation in the deed in terms to the "survivor," so that it is, perhaps, not conclusive of the point. But in all the States where similar statutes have been construed, it has been held *una voce* that the estate of husband and wife was unaffected by them. *Craft vs. Wilcox,* 4 *Gill,* 505 ; *Thornton vs. Thornton,* 3 *Rand.,* 179 ; *Shaw vs. Hearsey,* 5 *Mass.,* 521 ; *Pierce vs. Chase,* 108 *Mass.,* 258 ; *Jackson vs. Stevens,* 16 *Johns.,* 110 ; *Rogers vs. Benson,* 5 *Johns. Ch.,* 431 ; *Wright vs. Sadler,* 20 *N. Y.,* 320 ; *Den vs. Hardenberg,* 5 *Halstead,* 42 ; *Ross vs. Gannison,* 1 *Dana,* 35 ; *Rogers vs. Grider,* 1 *Dana,* 242 ; *Diver vs. Diver,* 56 *Penn. St* , 106 ; *McCurley vs. Canning,* 64 *Penn. St.,* 39 ; *Brownson vs. Hall,* 16 *Vermont,* 309 ; *Greenlaw vs. Greenlaw,* 13 *Maine,* 186 ; *Harding vs. Springer,* 14 *Maine,* 408 ; *Hemingway vs. Scales,* 42 *Miss.,* 1.

Moreover, a tenancy in common between husband and wife would be a legal monstrosity impossible of conception, as it would necessarily be deprived of all the legal incidents of a tenancy in common.   One tenant in common

can compel his co-tenant to account : he can convey his moiety discharged from any claim or lien of his co-tenant; he can compel partition, &c., &c.

Between husband and wife none of these things can be done.

The other statutes of this State in relation to husband and wife, Article 45 of the Code and its amendments, likewise leave this estate untouched.

These statutes must be strictly construed, being in derogation of the common law. They are intended to remove some of the incidents or consequences of the legal unity of husband and wife, but they do not, thereby, destroy that unity.

The cutting off of a few branches does not destroy the root of the tree. The cause remains, although some of the effects are averted by statute.

The Courts of Maryland and of other States have always construed these statutes strictly ; and in New York and Pennsylvania, where similar statutes prevail, the identical point has been decided as here argued. *Schindel vs. Schindel,* 12 *Md.,* 108, 294 ; *Sturmfelsz vs. Frickey,* 43 *Md.,* 571 ; *Farmers' and Merchants' Bank of Rochester vs. Gregory,* 49 *Barb.,* 155 ; *Diver vs. Diver,* 56 *Penn. St.,* 106 ; *McCurdy vs. Canning,* 64 *Penn.,* 39.

It has been the practice in this State, from time whereof the memory of man runneth not to the contrary, for trustees, in equity proceedings, to convey to any one whom their vendee may indicate, he joining with them in the deed, such a conveyance is in substance and effect a conveyance by the trustee to the purchaser, and by him to the third party. The practice is reasonable, and too firmly established to be disturbed.

In this case, the conveyance states that Perkins purchased for the Coles, and that they paid the money ; he was, therefore, a trustee for them, and his wife was not dowable of a trust estate.

But if we grant for the argument that the trustee's deed to Cole and wife was void, then they had made *no deed*, and could not be *functus officio* in any sense; and the confirmatory deeds cured the alleged bad practice, and cut off the nebulous right of dower alleged to have vested in Mrs. Perkins.

The mortgages which have been released are not liens upon the property because the notes thereby secured cannot now be produced.

The doctrine contended for by the appellant is monstrous; it would require the production of notes which were presumed to be destroyed when the mortgage was released and a new one given and of course cannot be produced now.

The decision in *Boyd & Parker* is elementary law, and does not increase the risk of a purchaser.

ALVEY, J., delivered the opinion of the Court.

This is an application by the appellee to compel the appellants to specifically perform a contract of purchase of a house and lot of ground in the City of Baltimore. A *pro forma* decree was entered by consent against the appellants, from which they appeal.

The case is presented upon bill, answer, and exhibits alone; and the first and principal question is, what is the nature and character of the estate that was conveyed by the deed of the 10th of July, 1872, from Dallam, Marine and Perkins, to Ann Rebecca Cole and Abraham Cole, her husband? Both in the granting clause and the *habendum* of the deed the property is declared to be to "the said Ann Rebecca Cole and Abraham Cole, her husband, their heirs and assigns, in fee." Abraham Cole has since died, and the appellants object to taking the estate under the contract with the appellee, upon the ground, among others, that the grantees in the deed just cited took distinct moieties, and that, consequently, Ann Rebecca Cole can only

convey the one moiety taken by her under the deed, and her dower interest in the other moiety : while the contract with the appellants requires her to convey, by good and sufficient deed, the entire property and estate, free from all incumbrances.

By the common law of England, which is the law of this State, except where it has been changed or modified by statute, a conveyance to husband and wife does not constitute them joint tenants, nor are they tenants in common. They are, in the contemplation of the common law, but one person, and hence they take, not by moieties, but the entirety. They are each seised of the entirety, and the survivor takes the whole. As stated by Blackstone, "husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout, et non per my ;* the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor." 2 *Blac. Com.* 182. This has been the doctrine of the common law from an early period of its history, for we find the principle as stated by Blackstone laid down in *Littleton's Tenures, sec.* 291, from whence it has been almost literally transcribed by all subsequent writers on estates. *Co Litt.*, 187 ; 2 *Cruise Dig.*, 492 ; 1 *Prest. Est.*, 131–2 ; 4 *Kent's Com.*, 362 ; 1 *Washb. R. Pro.*, (*4th Ed.*) 672, and the authorities there cited.

Mr. Preston, in his work on "*Estates,*" *vol.* 1, *p.* 132, has said that "where lands are granted to husband and wife *as tenants in common*, thereby treating them without any respect to their social union, they will hold by moieties as other distinct individual persons would do." But even this proposition has been strongly controverted, and denied to be supported by authority. *Dias & Burn vs. Glover*, 1 *Hoffman's Ch.*, 71 ; *Stuckey vs. Keefe's Ex'rs*, 27 *Penn. St.*, 397. It is not necessary, however, that we should

decide that question in this case, as the deed does not in terms convey the estate to the grantees as tenants in common, but simply to them as husband and wife, and their heirs, in fee.

Unless then this long existing and firmly established principle of the common law, whereby the husband and wife take seisin of the entirety, be changed or modified by Statute, it is too clear for any question whatever, that the appellee, having survived her husband, has the entire and absolute estate in the property, and may sell and convey it as she may think proper. Has the common law principle been changed by Statute?

The Code, Art. 49, sec. 12, being the codification of the Act of 1822, ch. 162, provides that no instrument of conveyance shall be construed to create a joint tenancy, unless it is expressly provided that the property shall be held in joint tenancy. But, as we have seen, the estate conveyed to husband and wife in a deed like the one before us, is not to them as joint tenants at the common law, and hence the Statute just referred to does not affect or apply to such an estate as that conveyed to husband and wife. This has been expressly so held by this Court, in the case of *Craft vs. Wilcox*, 4 *Gill*, 504. Similar Statutes to our own exist in a large number of the States of the Union, converting joint tenancies at the common law into tenancies in common, except where in the instrument it is otherwise expressly declared, and the invariable construction has been that they do not apply to or affect the peculiar estate taken by husband and wife, under a deed to them jointly. *Rogers vs. Benson*, 5 *John. Ch.*, 431; *Jackson vs. Stevens*, 16 *John.*, 110; *Shaw vs Hearsey*, 5 *Mass.*, 521; *Brownson vs. Hull*, 16 *Vt.*, 309; *Thornton vs. Thornton*, 3 *Rand.*, 179; *Diver vs. Diver*, 56 *Penn. St.*, 106; 4 *Kent. Com.*, 362; 1 *Bish. L. Mar. Women*, sec. 615, and cases there cited. Nor do the provisions of the Code, Art. 45, secs. 1 and 2, authorizing a married woman to

acquire and hold property as therein provided to her separate use, at all affect the nature of the estate conveyed to husband and wife by deed to them jointly. In reference to statutes of similar import in other States, the Courts have expressly held that they do not in any manner affect the nature of the estate which, according to the common law, the husband and wife take by a grant to them jointly; and these decisions are based upon principle and reasoning entirely satisfactory and conclusive. *Bates vs. Seely,* 46 *Penn. St.,* 248; *Diver vs. Diver,* 56 *Penn. St.,* 106; *Far. & Mer. Bk. of Rochester vs. Gregory,* 49 *Barb.,* 155; *McCurdy vs. Canning,* 64 *Penn. St.,* 39. It follows, therefore, that the common law principle remains unaffected by Statute.

It is next objected to the appellee's title, that the deed from Dallam, Marine and Perkins, should have been made directly to Perkins, inasmuch as he was reported by the trustees as the purchaser of the property. But it will be observed, that it is recited on the face of the deed that the purchase was in point of fact made for the appellee and her husband, and that they paid the purchase money. Perkins was, therefore, merely the trustee or agent of the grantees in the deed, and his joining in the deed with the trustees, the deed containing a recital of the facts, would seem to remove all possible objection to the manner of conveyance by the trustees. If, however, any real objection could be urged to the deed on the ground taken by the appellants, that objection would be effectually removed by the confirmatory deeds offered.

Then it is objected that the property has not been relieved of the incumbrance of certain mortgages made by the appellee and her husband. But as to two of the mortgages, they appear to have been regularly released on the record by the mortgagees, and there is nothing to show that the notes mentioned in the mortgages are held by third persons, or that they were negotiable. And as to

the third mortgage, that is not exhibited in the record, and the only evidence of its existence is found in the answer of the appellants. If, however, there be a subsisting mortgage, unpaid, it must be discharged and the property relieved before the appellants can be required to pay the purchase money and accept a deed from the appellee, under the contract of purchase. By that contract, the appellee covenanted to make a good and sufficient deed for the property, free of all incumbrances, which, of course, cannot be performed as long as there is a subsisting mortgage binding on the property.

The decree appealed from must be reversed and the cause remanded, in order that it be shown whether the alleged mortgage to Ella G. Paca for $400, and interest, be still a subsisting charge upon the property, and if it is, that it be discharged before the appellants shall be required to pay the purchase money under the contract, and accept a deed from the appellee.

> *Decree reversed, and*
> *cause remanded.*