WIEGAND KUNZ,

*vs.*

CHARLES C. KURTZ.

*New Castle, Sept. T.* 1899.

Where lands were conveyed to a husband and wife with *habendum* to them "their heirs and assigns forever," and the wife died during the lifetime of the husband, who thereafter entered into a contract for the sale of the said lands, and the purchaser refused to accept the deed from the husband, alleging that he took no title by survivorship, *held:*

(1) That by virtue of the conveyance the husband and wife became seized of an estate in entirety in fee simple, and that upon the death of the wife the husband became possessed of an estate in severalty, which he was able and capable in law to convey in fee simple.

(2) That a decree for the specific performance of the contract of sale will be made against the purchaser thereunder.

In this State, a conveyance of lands to a husband and wife creates an estate in entirety, and upon the death of the wife during the lifetime of the husband, the latter becomes possessed of an estate in severalty which he is able to convey in fee simple.

The estate in entirety exists in this State as at common law, and is not affected by the legislation for the benefit and protection of married women contained in the acts of March 17, 1865, March 23, 1871, and April 9, 1873, and the various amendments thereof.

The statute of this State providing that conveyances to two or more persons shall be deemed to create a tenancy in common and not a joint tenancy does not apply to estates in entirety under conveyances to husband and wife.

BILL FOR SPECIFIC PERFORMANCE.—The complainant claimed to be the owner in severalty of certain land in Wilmington, which had been conveyed to him and his wife by deed dated September 24, 1869. The wife, Annie E. Kunz, died September 12, 1892, leaving her husband, the complain-

ant to survive her. By agreement dated January 15, 1899, the respondent entered into an agreement with the complainant for the purchase of the said lands and agreed to pay for the same two thousand dollars upon the delivery of the deed, which was to be executed and delivered February 1, 1899; the title to be good and clear of incumbrances.

The facts alleged by the bill were admitted by the answer, but the respondent refused to take the title because he was advised that the complainant and his wife had been seized of the said lands as tenants in common in fee simple, and upon the death of the wife her moiety of the same descended to and became vested in her three children as her heirs at law under the intestate laws of this State, and that as to the moiety of the wife the complainant was only entitled to an estate by courtesy therein.

The respondent tendered himself ready and willing to perform the agreement made by him and to pay the purchase money if the complainant could make a good and marketable title to said lands and premises.

The cause was heard on bill and answer.

*J. Harvey Whiteman*, for the complainant.

1. The husband and wife, in contemplation of law are but one person, and they are therefore incapable of holding either as joint tenants or tenants in common. 2 *Black. Com.* 182; *Barber vs. Harris*, 15 *Wend.* 615; *Jackson vs. Stevens*, 16 *Johns.* 110; *Doe vs. Howland*, 8 *Cow.* 277; *Green vs. King*, 2 *W. Black.* 1211; *Rogers vs. Benson*, 5 *Johns. Ch.* 431.

2. By a conveyance to a husband and wife an estate in entirety is created; which estate has the quality of survivorship whereby the heirs of the survivor take to the exclusion of the heirs of the first deceased. *Tiedeman, R. P. secs.* 242, 243, 244; *Williams, R. P.* 226; *Marbury vs. Cole*, 49 *Md.* 402; *Doe vs. Howland*, 8 *Cow.* 277; *Barber vs. Harris*, 15 *Wend.* 615; *Lux vs. Hoff*, 47 *Ill.* 425; *Torrey vs. Torrey*, 14 *N. Y.* 430; *Harding vs. Springer*, 14 *Me.* 407; *Thomas vs. DeBaum*, 14 *N. J. Eq.* 37; *McDermott vs. French*, 15 *N. J. Eq.* 78.

3. Statutes providing that all conveyances to two or more persons shall be deemed to create tenancies in common, unless it manifestly appears to have been the intent of the parties that joint tenancies were intended, do not apply to conveyances to husband and wife. *Marbury vs. Cole*, 49 *Md.* 402; *Shaw vs. Hearsey*, 5 *Mass.* 521; *Bigelow vs. Bridge*, 8 *Mass.* 275; *Ketcham vs. Walsworth*, 5 *Wis.* 95; *Hemingway vs. Scales*, 42 *Miss.* 1; *Den vs. Hardenbergh*, 5 *Halsted* 49; *Fisher vs. Provin*, 25 *Mich.* 347; *Manwaring vs. Powell*, 40 *Mich.* 375; *Wright vs. Sadler*, 20 *N. Y.* 320; *Rogers vs. Benson*, 5 *Johns. Ch.* 431; *Jackson vs. Stevens*, 16 *Johns.* 110; *In re Shaver*, 31 *U. C. Q. B.* 605.

4. Statutes relating to the rights of married women do not effect conveyances to husband and wife, and they still take as tenants by entirety. *Den vs. Hardengergh*, 10 *N. J. L.* 49, 18 *Am. Dec.* 371; *Marbury vs. Cole*, 49 *Md.* 402; *Hulett vs. Inlow*, 57 *Ind.* 412; *Robinson vs. Eagle*, 27 *Ark.* 202; *Bennett vs. Child*, 19 *Wis.* [362]; *Fisher vs. Provin*, 25 *Mich.* 347; *McCurdy vs. Canning*, 64 *Pa. St.* 39; *Diver vs. Diver*, 56 *Pa. St.* 106; *Bates vs. Seeley*, 46 *Pa. St.* 248; *Farmers and Merchants Bank vs. Gregory*, 49 *Barb.* 155.

5. Estates by entirety are not joint tenancies. In a grant by way of joint tenancy, to three persons, each takes one-third part. In a grant to a husband and wife, and a third person, the husband and wife take one-half, and the other person takes the other half. In joint tenancy either of the owners may, at his pleasure, dispose of his share and convey it to a stranger who will hold it in common, not so with husband and wife, a severance of a joint tenancy may be made, and the estate thereby turned into a tenancy in common by any one of the joint owners at his will. Of the estate of husband and wife, there can be no severance. Joint tenants may make partition among them of their lands, after which each will hold in severalty. Of an estate of entirety, partition cannot be made. *Barber vs. Harris*, 15 *Wend.* 615; *Johnson vs. Hart*, 6 *Watts & S.* 319; *Gordon vs. Whieldon*, 11 *Beav.* 170; *Chandler vs. Cheney*, 37 *Ind.* 391; *Davis vs. Clark*, 26 *Ind.* 424; *Arnold vs. Arnold*, 30 *Ind.* 305; *Anderson vs. Tannehill,*

42 *Ind.* 141; *Doe vs. Parratt,* 5 *T. R.* 652; *Thornton vs. Thornton,* 3 *Rand.* 179; *Bobb vs. Beaver,* 8 *W. & S.* 111; *Diver vs. Diver,* 56 *Pa. St.* 286; *McCurdy vs. Canning,* 64 *Pa. St.* 39; *Lux vs. Hoff,* 47 *Ill.* 425; *Ketcham vs. Walsworth,* 5 *Wis.* 95; *Jackson vs. Stevens,* 16 *Johns.* 110; 2 *Kent* (*5th Ed.*) 131, 132; 2 *Black. Com.* 182; 4 *Kent Com.* 363.

Upon these principles the complainant is entitled to the relief prayed for in his bill of complainant.

*William F. Kurtz,* for the respondent.

The estate in joint tenancy with the right of survivorship was essentially a common law estate, and in this country the tendency both of legislation and judicial opinion has been opposed to it.

In some states, as Virginia, it is provided by statute that of whatever kind the estate may be, it shall not pass to survivors, but shall be subject to all the incidents of tenancy in common. The inconveniences arising from joint tenancies gave rise to the statutes of 31 and 32 Henry VIII, under which, a partition of a joint estate might be compelled, but this was never held to apply to the case of husband and wife who not only could not enforce partition but they could not even make it by mutual consent.

At common law the husband and wife holding by entirety were not seized of moieties but each was seized of the whole. The Virginia statute abolishing the *jus accrescendi* in joint estates was substantially a copy of the English statutes, and it was held not to include the case of husband and wife, because they were not joint tenants, and, each being seized of the whole, there was nothing which could accrue to the survivor. 1 *Hilliard, R. P.* 587; *Thornton vs. Thornton,* 3 *Rand.* 383.

The husband and wife are really joint tenants and their estate by entireties differs from other joint tenancies in degree but not in kind, they being seized *per tout* but not *per my.* *Ram, Tenure and Tenancy* (170–174).

The reasons given for the distinction between an estate

in entirety and other joint tenancies vary. Blackstone followed by Kent and Cruise, bases the distinction on the fact that husband and wife are one person in law, and, therefore, cannot take the estate by moieties, but each is seized of the entirety. 2 *Black. Com.* 182; 4 *Kent* 356; 2 *Cruise,* R. P. 509.

Another reason assigned was that upon the treason and attainder of the husband his property was forfeited to the Crown and the wife would be thus deprived of it, which was a hardship so great as to allow the courts to construe the estate as surviving to the wife. 1 *Hilliard R. P.* 580.

Judge Sharswood, in his notes to Blackstone, shows that the first reason is either erroneous or has been abandoned, and he says, "But where an estate is conveyed to a man and a woman who are not married together, and who afterwards intermarry, as they took originally moities, they will continue to hold by moities after the marriage. There is nothing therefore, in the relation of husband and wife which prevents them from being tenants in common. There are great opinions in favor of the position that husband and wife may by express words be made tenants in common by a gift to them during coverture. 2 *Prest. on Abstr.* 41; 1 *Preston on Estates* 132; 4 *Kent* 363; 1 *Reed's Black.* 470. The case of *Stucky vs. Keefe's Exrs.,* 2 *Casey* 397, holds a contrary doctrine. " 2 2 *Sharsw. Black. Com.,* 182 *note* 10.

On the other hand, forfeiture of property because of the treason and attainder of the owner thereof, has long since been abolished. Thus, all of the reasons given for the existence of such estates having failed, the law on which this reasoning was based must fall with it, unless there is something in the existing relations of husband and wife which will influence Courts to maintain the existence of this tenancy after the original reasons therefor have ceased to exist.

The one essential feature of joint estates and estates in entirety was the right of survivorship, and for the sake of this right alone, which was favored under the feudal tenures, the common law favored titles by joint tenancy. 4 *Kent Com.* 361.

After the reasons of that policy had ceased with the abolition of tenures, Lord Hardwicke considered that even the courts of law were no longer inclined to favor them and they were not favored in equity as a kind of an estate which made no provision for posterity. *Hawes vs. Hawes*, 1 *Ves. Sen.* 13.

In this country the title by joint tenancy is very much reduced in extent, and the incident of survivorship, is still more extensively destroyed, even where it is necessary, as in the case of title held by trustees. 4 *Kent Com.* 361. Feudal tenures being unknown and tenancies in common being more beneficial to the state and consonant to the genius of republics, the old English doctrine upon this subject has been not only qualified, but in many states actually reversed. 1 *Hilliard, R. P.* 485.

In this State the preference for tenancy in common was recognized in *Tubbs vs. Lynch*, 4 *Harring.* 521.

The doctrine of survivorship has been considered particularly odious in equity. 2 *Hilliard, R. P.* 557; *Gould vs. Kent*, 2 *Myl. & K.* 209; *Norman vs. Cunningham*, 5 *Gratt.* 63.

The Delaware statute abrogating the presumption in favor of estates in joint tenancy was in accordance with the sentiment which has been referred to as being opposed to the doctrine of survivorship. *Rev. Code*, (1893) 656. The letter and spirit of our modern married women's acts is inconsistent with the doctrine which underlies the common law estate in entirety and must be held to have abrogated it. This legislation comprises the Act of March 17, 1865, 12 *Del. Laws, ch.* 572, the Act of March 23, 1871, 14 *Del. Laws, ch.* 80, as amended by 17 *Del. Laws, ch.* 611, and the Act of April 9, 1873, 14 *Del. Laws, ch.* 550, as amended by 15 *Del. Laws, ch.* 165 and 16 *Del. Laws, ch.* 126. These acts are all printed together in *Rev. Code* (1693) 599–601.

The object and intention of these acts was to emancipate women from the thraldom under which they rested at common law; to secure to the wife the independent control of her own property and the right to contract, sue and be sued without her husband, under reasonable limitations. Their effect was

to make a radical change in the right of the wife to own property,—a change which equity tribunals gradually introduced into the unwritten law of England in order to secure like results. *Schoul. Dom. Rel.* 17.

The effect of this legislation and of the modifications of the relations of husband and wife with respect to property, as under the decisions of the English Court of Chancery, have brought about the result that husband and wife cease to be one and have become two distinct persons with distinct and independent rights. *Id.* 135. *Warrington vs. Warrington,* 2 *Hare* 54; *In re Dixon, Byram vs. Tull, L. R.* 42 *Ch. Div.* 306; *McCans, et ux. vs. Board's Heirs,* 1 *Dana* 340.

These married women's acts are remedial in their character and should be liberally construed by courts. *Hood vs. Jones,* 5 *Del. Ch.* 98; *Moore vs. Darby,* 6 *Del. Ch.* 203; *Diver vs. Diver,* 56 *Pa. St.* 106, 109; *Todd's Appeal,* 24 *Pa. St.* 429.

While it might be considered that the weight of American authority is in favor of the construction that both the statutes abolishing joint tenancies and survivorship and those known as married women's acts, do not destroy the estate in entirety, nevertheless an examination of the cases will show that the most recent decisions, on sound and logical reasoning, have abrogated the common law rule relative to estates in entirety, because all the reasons which supported the creation of the estate have ceased to exist, and there is now nothing in the policy of the law to prevent a wife from holding an estate in common with her husband as she might do with any one else. *Clough vs. Russell,* 55 *N. H.* 279; *Clark vs. Clark,* 56 *N. H.* 105; *Cooper vs. Cooper,* 76 *Ill.* 57; *Hoffman vs, Steigers,* 28 *Ia.* 302; *Appeal of Robinson,* 88 *Me.* 17.

In these four states, after the estate in entirety had been previously recognized, the Courts held that by operation of the married women's acts they were abolished. In Connecticut and Ohio the doctrine of estate in entirety never obtained. *Whittlesey vs. Fuller,* 11 *Conn.* 337; *Sergeant vs. Steinberber,* 2 *Ohio* 305; *Wilson vs. Flemming,* 13 *Ohio* 68.

The complainant and his wife became seized of the property in question by deed dated September 24, 1869. This

was after the passage of the first of the married women's acts, but before the later ones were passed. They were all passed before the death of the wife, September 12, 1892, and it is unnecessary to discuss the constitutionalty of the later married.woman's acts, in so far as they are retroactive in effect, as the Act of 1865 was passed before the complainant and his wife became seized of the property and would be sufficient to warrant the decision of the Court for the reason suggested, and the subsequent acts are applicable to show the spirit and intent of the legislation which aimed to secure to married women the separate control of their property.

THE CHANCELLOR:—

This is a suit brought by the vendor for the specific performance of a contract for the sale of lands which had been conveyed in fee simple by deed dated September 24, 1869, to him and his wife, who died September 12, 1892.

The respondent alleges that he refused to accept the deed solely on the ground that the vendor, the surviving husband, does not, as such, have an estate in severalty in fee simple in the land; his contention being that by the deed the vendor and his wife did not take an estate by the entirety, but became tenants in common so that the wife's moiety descended to her heirs.

Inasmuch as by the common law of England, if a deed be made to a husband and wife, both are seized of the entirety, the estate being thus distinguished from a joint tenancy where the seisin is said to be *per my et per tout*—by half or moiety and by all; and, inasmuch as it is a necessary consequence of this estate, that neither the husband nor the wife can dispose of any part without the assent of the other, but each being seized of the entirety, immediately upon the death of either the whole remains in the survivor as an estate in severalty, it follows that the meaning of respondent's contention is, that this familiar common law estate where the seisin of husband and wife is of the entirety does not exist in this State.

The authorities cited by the respondent's counsel show that in two states, Connecticut and Ohio, it has been always held that this species of estate was never adopted as a part of the common law of property, and it may well be that it has not been adopted by some of the newer states.

In Delaware, our first State Constitution, adopted September 20, 1776, provided, by Article 25, that ''the common law of England, as well as so much of the statute law as has been heretofore adopted in practice in this State, shall remain in force, unless they shall be altered by a future law of the Legislature, such parts only excepted as are repugnant to the rights and privileges contained in this Constitution and the declaration of rights, &c. agreed to by this convention.'' *Delaware Laws Appendix*, 89.

The exceptions are classified and discussed by Chancellor Bates in *Clawson vs. Primrose*, 4 *Del. Ch.* 643, and after analyzing them, he says (page 667):

''But, on the other hand, our early legislative and judicial history shows conclusively that what may be termed the common law of property was received as an entire spstem, subject to alterations by the Legislature only. Rights of property and of person are fundamental rights necessary to be defined and protected in every civil society. The common law, as a system framed to this very end, could not be deemed inapplicable in the colonies for want of a subject-matter, or as being needless or superfluous or unacceptable, which is the true sense of the limitation in question. Certain it is, as a matter of history, that our ancestors did not so treat it. Perhaps no branch of the common law was adopted in this State so entire as this law of real estate, the whole body of which, with all its rules for defining the nature and quantity of estates in lands, for prescribing the modes of acquiring title to them, and for regulating their transmission was, from the beginning, administered by our Courts substantially as in England with such modifications only as were made from time to time by the Legislature.''

It is true that counsel for the respondent has not denied that estates in entirety were at one time a part of the

"common law of property" in this State, yet I have deemed it necessary to state this with some fullness of detail as an introduction to the direct consideration of the brief submitted by him, which presents and fortifies his contention with all the arguments and authorities discoverable.

Estates in joint tenancy were very early looked upon with disfavor in this country, and statutes allowing partition of such estates, or destroying the incident of survivorship, or merely abrogating every presumption in favor of joint tenancy were generally adopted.

As estates in joint tenancy could only arise by the purchase or acquisition by the act of the parties, never by descent, or act of law, an act passed in our own State at an early date (February 16, 1816) aided the general dislike of such estates so effectively as to render them extremely rare, if not practically obsolete. The Delaware statute is as follows:

"No estate in joint tenancy, in lands, tenements, or hereditaments, shall be held, or claimed, by, or under any grant, devise, or conveyance made to any persons, other than to executors or trustees, unless the premises therein mentioned shall be expressly granted, devised, or conveyed to such persons, to be held as joint tenants and not as tenants in common." *Rev. Code* (1893) 656, *ch.* 86, *sec.* 1.

The common law of real estate has always been too well understood in this State to permit the question to be raised, that this statute affected the nature of the estate conveyed by a deed to husband and wife. The training of the Delaware Bar rendered the distinction between an estate in joint tenancy and an estate in entirety literally horn book law. The question has been raised, however, in a number of states under similar statutes, although in nearly every one the correct distinction has been recognized, and the conveyance to husband and wife held to create not an estate in joint tenancy, but an estate in entirety which was in nowise affected by such statutes.

Chancellor Kent, in passing upon the question, said:

"The same words of conveyance, which could make two

other persons joint tenants, will make the husband and wife tenants of the entirety. This is a nice distinction laid down in the old books, and which has continued to be law to this day; and the special provision in our statute, that no estate in joint tenancy shall be held under any grant or conveyance, unless the premises were expressly declared to pass, not in tenancy in common, but in joint tenancy, does not reach this case, for the estate of the husband and wife is not a joint tenancy. (*Litt. s.* 291, 665. *Co. Litt.* 187, *b. Bro. Abr. tit. cui in vita, pl.* 8; *Back vs. Andrews,* 2 *Vern.* 120; *Green vs. King,* 2 *W Black Rep.*12 11; *Jackson vs. Stevens,* 16 *Johns. Rep.* 110.)" *Rogers vs. Benson,* 5 *Johns. Ch.* 431, 437.

In the Virginia Court of Appeals, Judge Carr in passing upon the effect of a statute providing that all joint tenants might be compelled to make partition, stated the distinction between the estates with perfect precision and accuracy, as follows:

"Now, although these laws use the broadest terms, 'all joint tenants that be, or hereafter shall be, of estates of inheritance,' &c., may be compelled to make partition, &c.; yet it is most certain, that they have never been supposed to reach the case of lands given in fee, (or for any lesser estate,) to husband and wife; for all the books, from the oldest I have been able to examine, down to the present day, agree, *una voce,* in this; that husband and wife, not only cannot compel each other to make partition, but that even if they concur in the wish, they have not the power, to sever the tenancy. It is a *sole,* and not a *joint*-tenancy. They have no *moieties.* Each holds the *entirety.* They are *one* in law, and their estate *one and indivisible.* If the husband alien, if he suffer a recovery, if he be attainted; none of these will affect the right of the wife, if she survive him. Nor is this by the *jus accrescendi.* There is no such thing between them. That takes place, where, by the death of one joint tenant, the survivor receives an accession, something which he had not before, the right of the deceased. But husband and wife have the *whole,* from the moment of the conveyance to them; and the death of

either cannot give the survivor *more.*" *Thornton vs. Thornton,* 3 *Rand.* 179, 183.

It is not necessary to quote further from the cases, but counsel for the complainant has cited the following, all of which I find, upon examination, are in accord with the cases from which I have quoted. *Craft vs. Wilcox,* 4 *Gill* 504; *Marburg vs. Cole,* 49 *Md.* 402; *Den vs. Hardenbergh,* 10 *N. J. L.* 49; *Stuckle vs. Keefe's Ex'rs.,* 26 *Pa. St.* 397; *Bates vs. Seely,* 46 *Pa. St.* 248; *Diver vs. Diver,* 56 *Pa. St.* 106; *McCurdy, et al. vs. Canning,* 64 *Pa. St.* 39; *Jackson vs. Stevens,* 16 *Johns.* 110; *Jackson vs. Cary,* 16 *Johns.* 302; *Shaw vs. Hearsay,* 5 *Mass.* 521; *Fox vs. Fletcher,* 8 *Mass.* 274; *Fox vs. Varnum,* 12 *Mass.* 474; *Draper vs. Jackson and wife,* 16 *Mass.* 480; *Brownson vs. Hull,* 16 *Vt.* 309; *Ketchem vs. Walsworth,* 5 *Wis.* 95; *Bennett vs. Child,* 19 *Wis.* [362]; *Hemingway, Adm'r. vs. Scales,* 42 *Miss.* 1; *Robinson vs. Eagle,* 27 *Ark.* 202; *In re Shaver,* 31 *U. C. Q. B.* 605; *Hulett vs. Inlow,* 57 *Ind.* 412.

Counsel for the respondent does not seriously urge this statute as a ground for his contention, but bases his argument essentially upon what are called "the married women's acts" in this State, the first of them having been passed March 17, 1865, 12 *Del. Laws, ch.* 572, about four years prior to the date of the deed to the vendor and his wife. He argues that these statutes "have abrogated the common law rule relative to estates in the entirety, because all the reasons which support the creation of the estate have ceased to exist, and there is now nothing in the policy of the law to prevent a wife from holding an estate in common with her husband, as she might do with any one else." In support of this argument he has been able to produce decisions in his favor from four states, to wit: Maine, New Hampshire, Illinois and Iowa, the cases he cites being *Clark vs. Clark,* 56 *N. H.* 105, *Cooper vs. Cooper,* 76 *Ill.* 57; *Hoffman vs. Steiger,* 28 *Ia.* 302; *Appeal of Robinson,* 88 *Me.* 17. The last case is the only one in which the reasoning is based upon some familiarity with the common law of real property, although the Court cites, and apparently relies upon the three other cases, *supra,* as authority to sustain the radical step taken in its decision.

Opposed to these cases, is the overwhelming weight of American authority, amounting almost to unanimity.

In the case of *Diver vs. Diver*, 56 *Pa. St.*, 106, 109, the opinion of the court was delivered by Judge Strong, afterwards a Justice of the Supreme Court of the United States, and generally recognized as pre-eminently versed in the common law. His reasoning seems so clear and conclusive that it is difficult to believe that any court to which this opinion should be read, could possibly discuss and decide the question as was done in the four cases I have cited *supra* from the states of Maine, New Hampshire, Illinois and Iowa. This opinion is so brief and the point decided so absolutely identical with that raised in the pending cause, that I will quote it at length.

"But it is said the Act of 1848 (commonly called 'The Married Women's Act,') by destroying the legal unity of the husband and wife, has converted such an estate into a tenancy in common; that is, that such a deed conveys a different estate from that which the same deed would have created, if made prior to the passage of the Act. To this we cannot assent. It mistakes alike the letter and the spirit of the statute imputing to it a purpose never intended. The design of the legislature was single. It was not to destroy the oneness of husband and wife, but to protect the wife's property, by removing it from under the dominion of the husband. To effectuate this object, she was enabled to own, use and enjoy her property, if hers before marriage, as fully after marriage as before. And the act declared that if her property accrued to her after marriage, it should be owned, used and enjoyed by her, as her own separate property, exempt from liability for the debts and engagements of her husband. All this had in view the enjoyment of that which is hers, not the force and effect of the instrument by which an estate may be granted to her. It has nothing to do with the nature of the estate. The act does not operate upon rights accruing to her until after they have accrued. It takes such rights of property as it finds them, and regulates the enjoyment, that is, the enjoyment of the estate after it has vested in the wife. And the mode of authorized enjoyment is significant. It is to be

as her separate property is enjoyed, as property settled to her separate use. The act therefore no more destroys her union with her husband than does a settlement of property for her separate use. To a certain extent she is enabled, but no more than is necessary, to protect her property after it has been acquired. We have held that she can convey her lands only by joining in. a deed with her husband. *Pettit vs. Fretz*, 9 *Casey* 118. This is a clear recognition of the existing unity of the two. It need not be repeated that no greater effect is to be given to the Act of 1848 than its language and spirit demand. It is a remedial statute, and we construe it so as to suppress the mischief against which it was aimed, but not as altering the common law any further than is necessary to remove that mischief. To hold it as operating upon the deed conveying land to a wife, making such deed assure a different estate from what it would have assured without the act, is to lose sight of the legislative purpose. Were we to do so, it would become in many cases a means of divesting her of her property, instead of an instrument of protection. In the present case, if it has converted the estate granted to Diver and his wife into a tenancy in common, it has taken from her her ownership and enjoyment of the entirety during her husband's life and her right of survivorship to the whole. On this subject the remarks of Chief Justice Lewis in *Stuckley vs. Keefe's Executors*, 2 *Casey* 401, are worthy of attention."

The following cases cited by complainant's counsel hold to the same effect. *Marburg vs. Cole*, 49 *Md.* 402; *Bates vs. Seely*, 46 *Pa. St.* 248; *McCurdy, et al. vs. Canning*, 64 *Pa. St.* 39; *Farmers etc. National Bank of Rochester vs. Gregory*, 49 *Barb.* 155; *Wright vs. Saddler*, 20 *N. Y.* 320; *Shaw vs. Hearsey*, 5 *Mass.* 521; *Fisher vs. Provin*, 25 *Mich.* 347; *Robinson vs. Eagle*, 29 *Ark.* 202.

It would be altogether superfluous for me to prolong this opinion by additional argument or further citations, or to make any analysis of the opinion of the Courts in the four cases I have cited *contra*.

Opinion:—Conclusion.

Common law estates cannot be modified or destroyed in this State by such inferences from legislative action, as is made the basis of the argument in those four cases, that estates in entirety had been abolished.

The estate in entirety, and the mode in which it may be created is as clearly defined and well understood in our law, as in the case with estates in common or coparcenary, or the estate of a tenant by the courtesy or a tenant in dower. Legislation direct and unequivocal is as necessary to abolish the one as the other.

In view of the fact that this is the first time that this question has ever been raised in this State, I have though tit desirable that I should discuss it somewhat fully, especially in consideration of the industry and ability displayed by counsel for the respondent in the preparation of an argument in a case where authority is so overwhelmingly against him.

It appearing, therefore, that the complainant has an estate in severalty in fee simple in the land described in the bill, and no other objection having been made to the granting of the prayers of the bill, it follows that a decree must be entered directing the specific performance of his contract.