JOHN W. FOX and LYDIA H. his wife, formerly LYDIA H. COLE,

*vs.*

TILGHMAN S. JOHNSON, who has survived WARREN S. LAYTON, deceased.

*Sussex, Mch. T. 1873.*

Marriage extinguishes at law all contracts and debts previously existing between husband and wife, and in equity the effect is the same except where some equitable considerations intervene, which render it proper to preserve the debt against the operation of the rule at law.

The extinguishment of a pre-existing debt of the husband to the wife, by marriage, is absolute, operating upon the debt and not upon the remedy, and requiring no act of the husband equivalent to a reduction to possession as in the case of a debt due from a third person. It is a legal consequence of the marriage, not resting upon a presumed intention of the parties, but upon the technical ground that the same person cannot be both debtor and creditor.

Debts, payable in the future, previously existing between husband and wife, are extinguished by the marriage as well as debts payable *in præsenti*; provided they may become payable during the marriage.

An equity in favor of the wife to have her right to the debt protected by the Court of Chancery must rest upon one of these grounds, viz : contract, trust or fraud.

Where the husband was one of two joint debtors and was discharged by the marriage, the other joint debtor is discharged also.

BILL IN EQUITY.—This was a bill filed by the complainants to enforce payment by the defendant of a note made by himself and Warren S. Layton a former husband

of Mrs. Fox prior to her marriage with Layton, and which it was claimed by the defendant had been extinguished by the marriage.

The facts, which were not in dispute, were as follows :— Prior to 1865 the defendant and Warren S. Layton were partners in business under the firm-name of Warren S. Layton & Company. Layton, the acting partner, living and doing business at Milton, and the defendant at Millsboro. On October 5, 1865, they executed their joint judgment note of that date to Lydia H. Fox (then Cole) for $1800, payable December 5, 1867. On December 19, 1865, Lyda H. Cole intermarried with Layton and on January 16, 1866 Layton died, a member of the firm, whereby the partnership was dissolved and the defendant as surviving partner took possession of the effects. On October 2, 1867 Mrs. Layton intermarried with the complainant Fox.

With respect to the note, the bill alleged that it was given for a loan to the firm from Mrs. Cole, that it is now in the separate and exclusive possession of Mrs. Fox and has so continued from the term of its execution, that the note and debt were never reduced to possession by Layton or by any person for him; but that the whole sum of $1800, with interest from October 5, 1865, is due and unpaid and owing to complainants.

The bill also alleged that at Layton's death the firm was solvent and that the defendant, having taken posssssion of the assets of the firm at Layton's death, has rendered no account. The prayer of the bill was for answer, decree for payment, general relief and process.

The answer, as to the making of the note, alleged that Layton furnished no capital to the firm but that defendant paid in more, some $500, and that they borrowed from John W. James $300, and from Isaac W. James

$400, on joint judgment notes, the latter of which debts defendant has paid, and interest on the former since Layton's death while the principal of the latter debt is still due. That on October 5, 1865, Layton proposed to borrow of Mrs. Cole $1800, if defendant would go security that there would be no risk as he was to marry her ; that defendant consented and signed the note as surety and never knew whether Layton received the money or how he applied it, and it is denied that the money was lent to the firm or any part of it carried into the partnership ; defendant never proposed to Layton to borrow the money for the firm, nor was it necessary. The defendant alleges that he has never seen the note since he signed it and knows nothing as to its possession, and he denies his liability. The answer further alleges that after Layton's death he proceeded to close up the business ; that the firm was largely indebted in Philadelphia and elsewhere and was insolvent and that the defendant has appropriated no part of the assets but has overpaid to debts.

It was also alleged that Mrs. Layton administered on the estate of her husband, that his private debts far exceeded his assets and that his estate was entitled to nothing from the partnership.

There were filed, as exhibits by the complainant, the judgment note ; and by the defendant the note or a copy, a statement of firm assets and debts, the note of $400, paid to Isaac W. James and the record of the appointment of Mrs. Layton as administratrix of her husband Warren S. Layton.

No depositions were taken on either side.

*Wright,* for the complainants.

The question presented is whether a joint bond of

two to a feme sole, who afterwards marries one of the obligors, can, after his death, be recovered against the surviving obligor.

The bill and answer differ only on two points. 1, As to the character in which the bond was given, the bill alleging as *joint debtors*, and the answer that Johnson was surety. 2, The bill alleges that the partnership was solvent at Layton's death and the answer that it was insolvent.

Neither of these points affect Johnson's liability ; even as surety he is bound, for there is no defense in the cause specially applicable to him as surety. But his suretyship is not fully established, the denial that he was a joint debtor is responsive, but not the additional allegation of suretyship which is new matter not responsive and must be proved. That the two obligees are co-debtors is a presumption, strengthened by the charge in the bill, and must be rebutted by proof.

Again the solvency of the firm is immaterial. Its insolvency alone would not release the partners either as co-debtors or surety.

The execution of the note being admitted, carries with it the presumption of delivery. Mrs. Cole's possession presumes delivery.

The defense is that the debt was released by marriage. This is one of the modes of " confusion," *i. e.* the union of right and liability in the same person. *Cage vs. Acton*, 1 *Salk.* 306 ; *Cage vs. Acton*, 1 *Ld. Raym.*, 515 ; *Bouv. Law. Dict. Tit.*, "*Confusion.*"

But not all debts of husband to wife are extinguished by marriage. Mere marriage *per se* does not extinguish or release the debt. It gives the husband a right to

extinguish, but he may not exercise it. The necessity of reduction to possession is unquestioned as to debts from third persons. Why should he stand otherwise as to his own debt. The husband by marriage becomes creditor and debtor, but *in* two different capacities and may be so treated as if two persons. *Richards vs. Richards*, 2 *Barn. & Ald.* 447.

The charge by the bill that Layton did not reduce the note to possession, and the fact that the wife has possession, uncontroverted by the answer, are evidence that he did not.

The objection from unity of person ceases at his death and the legal principle that her possession is his possession no longer applies. The suspension of a remedy does not extinguish the debt, as in the case of privileged persons or aliens during war.

The assumption of a discharge is against two maxims, *modus et conventus vincit legem*, and the law will not work a wrong.

Releases are either express or by operation of law, and in the latter case rest merely on the legal presumption of *the intent of the parties*, from some act.

Marriage is a release of the latter class and subject to the same principle. It is grounded upon the presumed intent of the parties. 2 *Pars. on Cont.*, 715. The reasons for the presumption in case of marriage are the technical ones that husband and wife are one and consequently that debtor and creditor become one, and thus the remedy for the debt is suspended. The husband's death by removing these reasons removes the presumption. The presumption, which is that the debt has been canceled, may be rebutted by circumstances, such as :—

1. That the debt is in terms payable after the husband's death. *Cage vs. Acton,* 1 *Ld. Raym.,* 515 ; *Milburn vs. Ewart,* 5 *T. R.* 581 ; *Cage vs. Acton,* 1 *Salk.,* 326.

2. Contracts in consideration of marriage.

3. Debts contracted during marriage. *Slanning vs. Styles,* 3 *P. Wms.* 335 ; *Richards vs. Richards,* 2 *Barn. & Ald.* 447.

4. Debts created before marriage and not reduced into possession. The only case found is one of divorce between husband and wife the latter holding the husband's bond given before marriage upon which she held entitled to recover. *Bouv. Law Dict.* 141, *Tit. " Divorce,"* citing 22 *Hen.* 8 (*I*) ; *Dougherty vs. Snyder,* 15 *S. & R.* 84 ; *Cage vs. Acton,* 1 *Salk.* 325.

Her holding the note subject to the marriage, with the presumed consent of the husband, is evidence of an intent not to discharge and is equivalent to an ante-nuptial agreement, or is evidence of it. It at least rebuts the presumption of an intent to extinguish and throws upon the defendant the *onus* of shewing an intended extinguishment. In addition is the fact that the note was not due at the marriage and did not *in fact* become due during the husband's lifetime.

The rule applies only to debts due *in præsenti* and not to a debt not actually due during the marriage.

*Cullen* and *Moore,* for the defendant.

*First.* The general principle that the marriage of the obligor with the obligee *ipso facto* discharges the debt is not controvertible. This is not merely on the ground of consideration, but from necessity by reason of the unity of the parties, and the effect is not to suspend the remedy

but to extinguish the debt. 1 *Bright on H. & W.* 18. The rule is limited to debts *in præsenti* or which *may become due during the marriage.* *Ib.* 19. The distinction has reference to contracts expressly provided to become due after dissolution of the marriage. 2 *Sto. Eq. Jur.* *Sec.* 1357, 1370.

Unquestionably there are exceptions arising out of equities preserving the debt, as in a case of ante-nuptial or post-nuptial contracts. *Riley vs. Riley*, 25 *Conn.* 154.

But this case presents no such equities and the inference is, that, without the agreement, the Court would have held the marriage a discharge. 1 *Bouv. Law. Dict.* "*Confusion*," *Sec.* 4; 1 *Bright H. & W.* 20.

We admit that the rule operates upon the presumed intent, but the presumption, like all legal presumptions is conclusive unless rebutted. In the absence of proof to the contrary the wife is presumed to intend the legal consequences of her act; just as in the case of an appointment by a testator of his debtor to be his executor.

*Second.* The effect of marriage of the creditor with one of two joint obligors is to release both. This is a discharge of one in law by act of the party, and not by mere operation of law, as in bankruptcy. *Colly on Partn.* 555, *Sec.* 606 *& notes*; *Ward vs. Johnson*, 13 *Mass.* 151-2; *Robertson vs. Smith*, 18 *Johns.* 459; *Hoosack vs. Rogers*, 8 *Paige* 229; *Chitty on Cont.* 864; *Allen vs. Shadbein*, 1 *Dana* (*Ky.*) 69; *Co. Litt.* 264, *Sec.* 445; *Nicholson vs. Revill*, 4 *A. & E.* 675.

The rule is, that, unless all are released, contribution lies, and that would defeat the full discharge of the one released. The discharge of all is necessary to give full effect to the act of the party releasing. *Burge on Suretyship*, 409; *North vs. Wakefield*, 13 *A. & E.* 536.

Marriage is itself a valuable consideration. *Bishop on the Law of Married Women*, 775. So that, although the wife has lost her money, it may be fairly answered that she received in the eye of the law a valuable consideration in the marriage. Such is always the general effect of a marriage. *Sto. on Agency, Sec.* 481 ; *Sto. on Bailm. Sec.* 206.

A personal action once suspended is forever gone. 2 *Wms. on Exr.'s,* 1123.

*Third.* The same rule applies in equity as at law.

A rule of law is in force in equity unless there be some equitable ground of exception. 1 *Sto. Eq. Jur.* 112. In this case there are no equities shewn.

The doctrine of a reduction to possession is inapplicable because it is impossible. The husband cannot collect the debt from himself, hence the marriage operates *ipso facto*. The notes remaining in the possession of the wife, was of no consequence because it was of no legal operation. Though the notes existed the debt did not. The inquiry, why should the husband stand in better position as to his own debt than to another, is fallacious, in assuming that there is any debt after marriage.

The case of divorce proceeds upon the principle of dissolution of the marriage *ab initio* and avoiding all its consequences, among which is the release.

All the considerations stated apply with more force to this as a surety debt ; for on higher and peculiar grounds the discharge of the principal or even a temporary suspension of the remedy against him absolutely discharges the surety. As against a surety even equities between the wife and husband would not preserve the debt.

This cause was argued at the March Term, 1873, and on May 21, following, *W. Saulsbury*, of counsel for the complainant, not having been present at the argument, was heard, at his request, and *Cullen* replied. This argument reviewed the considerations already advanced on both sides.

THE CHANCELLOR :—

The general rule was not disputed in the argument that marriage extinguishes at law all contracts and debts previously existing between husband and wife. The effect is the same also in equity, except where some equitable considerations intervened, such as may render it proper for that reason to preserve the debt against the operation of the rule at law. But the application of the rule to the present case was resisted in argument upon substantially these grounds which I have considered separately.

*First* :—That the effect of marriage is not to extinguish the debt *absolutely* ; but that it confers on the husband the power at his election to discharge himself by some act significant of his intent to do so, as by canceling or destroying the evidence of the indebtedness, if it were a written instrument, or otherwise if the debt were not of such a nature as to be canceled it might be discharged by some act or course of action signifying the husband's election to discharge it. The husband's relation to a debt due from himself at the time of intermarriage was treated in the argument as being analogous to his power over debts or *choses* in action of his wife due *from third persons*, which become his own, not absolutely, but only upon his reducing them to possession, by some act of marital control, as by suit or assignment or release of the *chose* in action. One of the counsel for the complainant varied the argument so as to concede that marriage was of itself a *presumptive* extinguishment, requiring no

future positive act of the husband to give it this effect, but that, as the extinguishment rested upon a presumed intent of the parties, that the marriage should have that effect, the presumption of such intent might be rebutted by facts and circumstances proved, shewing, to the satisfaction of the Court, that, in the particular case, the debt was intended to remain in force notwithstanding the marriage, and was so treated by the parties.

The facts relied upon, as shewing the husband's election, in this case, not to discharge himself by the intermarriage but to leave the debt subject to the wife's right of survivorship, were these:—that, although the debt was contracted pending an engagement for marriage, a written security for it was taken ; which was needless if not to continue under the marriage ; also that it was made payable at a time considerably to the future ; and that the husband during all the time of the marriage suffered the note to remain in the wife's possession, as before the marriage, never exercising his marital control over it by canceling or or destroying it, or, even by taking it out of his wife's custody. From all which premises the inference was drawn in the argument that he intended the debt to remain in force, and, if so, that the general rule does not operate upon it. I have endeavored to state the argument with all the the force, which was not a little, given to it by the learned counsel for the complainant. There are two difficulties in the way of this view.

1st. Under the rule in question marriage does extinguish *absolutely* the pre-existing debt of the husband to the wife. This is a necessary result, because by the marriage the same person becomes both creditor and debtor, which at law cannot be ; nor in equity either can this be without some equitable ground. There arises what is termed confusion of rights. *Bouvier Law Dict. Title, Confusion.* The existence of the two relations, *i. e.*, of debtor and

creditor in the same person is incompatible.; hence, necessarily, the debt ceases to exist and once gone it is gone forever. For it is not the case of a *suspended remedy* but of *an extinguished obligation.* This difference is too obvious to need more than the statement of it. Further, the fact that marriage operates upon the *debt* and not upon the *remedy* destroys all analogy between the debt of the husband and the debt of a third person such as to require according to the argument some act of the husband equivalent to a reduction into possession in order to bar the wife's right by survivorship. The marriage of a *feme sole* has no effect upon the debtor's obligation under a debt or *chose* in action held by her against a third person. The marriage in such case affects only the remedy. The debt remains with all its force, only, whereas before the marriage it was recoverable by the wife alone, it is after the marriage recoverable by the husband, either alone or jointly with her ; and there is no incompatibility in the rule of law which requires that the husband shall exercise the remedy or reduce the debt into possession in order to vest it in himself absolutely. But the reduction into his possession, as creditor, of a debt due from himself is an absurdity. If it be said that he can at least take possession of the note, the answer is that this is not what is meant by a reduction of the debt into possession. That applies to the debt itself and not to the evidence of it. The husband's reduction of a *chose* in action of a third person to his possession is exercised, in the sense of the law, not by taking custody of the evidence of it, *i. e.*, of the note or bond given for it, but he reduces it to possession, by assigning or releasing it, or by exercising in some way his marital control over the debt. No such thing as this can be done by him with respect to his own debt. There is, therefore, no possible ground of analogy between this and the *chose* in action of a third person. The argument for the complainants rests on the assumption that the rule under consideration proceeds upon the presumed in-

tent of the parties that the debt should be released or extinguished by their intermarriage ; but such is not the ground of the rule. The extinguishment of the debt is one of the legal consequences of the marriage, attaching to it on the grounds of public policy, and which take effect irrespective of any intention of the parties. It is true that the legal operation of marriage, so far as concerns the husband's marital rights over the property of his wife, may be modified ; but that must be by some legal action of the parties, such as a marriage contract or ante-nuptial settlement, or by a trust ; or there must, at least, be some transaction to raise an equity in favor of the wife against the legal operation of the marriage. The bare intent of the parties that marriage shall have some other operation than the law gives to it, however plainly manifest, cannot vary its legal consequences. For example, marriage, by force of law, upon grounds of policy, and not from any presumed intent of the parties, vests in the husband, absolutely, the wife's chattels, in possession. It is clear that, if through a misapprehension of the law, or otherwise, the parties to a marriage supposed, or intended, that the wife should retain her chattels, that alone would not make them her separate property and exempt them from her husband's debts. To have that effect there must have been a marriage contract, or trust, or an equity in favor of the wife arising out of some consideration. The marriage itself might be a sufficient consideration to raise such an equity ; but to have that effect it must appear that the debt was to remain in force in consideration of the marriage ; that otherwise the marriage would not have been entered into so as to make really a case of contract. Take another illustration—marriage by law invests with the husband, a qualified title to his wife's *choses* in action, that is, he may make them his by reducing them into possession. Now, if it could be proved in any case that a husband and wife at the time of their marriage supposed or intended that the

husband should succeed to her *choses* in action,absolutely, without any act reducing them to possession, the rule of law would not thereby be varied, and the wife be deprived of her right of survivorship. So, in this case, marriage, by law, upon the technical ground that the same person cannot be both debtor and creditor,and not upon any presumed intent of the parties,extinguishes the pre-existing debt of the husband to the wife. It must be as clear that this legal consequence of the marriage will not, any more than those just spoken of, be varied by proof that the parties supposed or intended that their marriage should have some different operation. To give such effect to the bare intent of the parties would lead to this result, that there would be no general marriage law fixing the marital rights of a husband, but these would be whatever in any particular case it could be shown, that the parties supposed or intended them to be. The conclusion, then, seems clear that all the legal consequences of marriage, of which the extinguishment of pre-existing debts between the parties is one, are not to be avoided by evidence that the parties intended otherwise : but there must be some contract, settlement, or trust sufficient to raise an equity in favor of the wife against the legal operation of the marriage.

It is a fact worthy of notice on the question whether the extinguishment of a debt by marriage is absolute, that in the books the rule is uniformly stated in terms to that effect. 2 *Story's Eq. Jur. sec.* 1370; *Bright's Husband and Wife* 18; and in the general discussion of the rule in the cases, especially in the leading case on this subject, *Cage vs. Acton*, 1 *Lord Raymond* 515, marriage is throughout treated as a direct and immediate release, discharge, or extinguishment of the debt except in a case where a special equity to the contrary exists. It is difficult to see how, if marriage were but a qualified extinguishment, it should never have been, in any of the cases or treatises on the subject so referred to.

2d. But there is another objection to the argument for the complainant that the extinguishment of the debt is upon the presumed intent of the parties, and that the facts of the case show that the intent of the parties was that the debt should remain in force. I have weighed the facts relied upon. They do not convince me, nor even raise any good degree of probability, that the parties intended or supposed that this debt should not be subject to the ordinary operation of marriage. The fact that a note with surety was taken for it at the time the money was loaned to Layton, is of no significance whatever. Even if the money were loaned in direct expectation of marriage, and that the debt would then be discharged by it, still the contingencies which might prevent the marriage would not have been likely to be overlooked, and would have prompted the taking of the usual evidence and security for the debt in the first instance. But the fact most relied on is that the note was allowed by the husband to remain in the wife's separate custody, as before the intermarriage. This is supposed to be shown by the fact that the note is now produced by her. But her present possession of the note does not prove that it was allowed by the husband to remain with her as her own property. It raises no such presumption even, for she is the administratrix of her husband, and that sufficiently and most naturally accounts for her present possession of the note. At all events, it renders her possession altogether too inconclusive as to the character and object for which she held it. One more circumstance was relied on to support the argument that the debt was intended to stand in force; that is, that the husband did not destroy or cancel the note. This omission is too inconclusive to vary the effect of the rule, considering that under the law, the marriage by its own force had extinguished the debt, without any special disposal of the note, the omission of the husband to destroy or cancel it can be referred only to the reason that the debt being

75—DEL. CH. IV.

discharged, it was immaterial what should become of the note. On the whole the conviction which the evidence leaves on my mind is that the parties gave themselves no concern about the matter, but left the law as to the effect of marriage to take its ordinary course. It is hardly conceivable that they would have acted so carelessly had there been any purpose to secure to the wife a debt of so large an amount as $1800. An object of so much importance would have led to some positive action to secure the result such as a contract, or the creation of a trust.

The *second* ground, taken for the complainant, was that this debt, as a matter of fact, became due after the death of the husband. The note was taken October 5, 1865 ; it was payable December 5, 1867. Layton, the husband, died January 16, 1866, before the note become due. It was argued that the rule of law applies only to debts due *in præsenti*, or to such as actually become due during the marriage. But the ground upon which the rule proceeds, applies, as well to a debt payable in the future, as to a debt *in præsenti*, provided the debt *may become payable during the marriage* and the payment of it is not expressly postponed until after the death of the husband. For although payable in the future, it is, in law, a present indebtedness. *Debitum in præsenti, solvendum in futuro.* With respect to such a debt there must be both debtor and creditor, which two relations a husband cannot sustain, and so the principle, by which the debt is extinguished, applies. It has also been considered that a debt, say of a third person, which might become due in the husband's life could be released by him, and that as he could release such a debt of a third person, he must be held discharged of a like debt of his own. These, it is true, are very technical considerations, but the rule itself is altogether technical as applied to any debt whatever, and having been adopted as the law of marriage, it has been left to have its logical application

as well to the one kind of debt as to the other, future as well as present, where no equity intervened. We find, therefore, that although this precise point does not appear to have been ruled in any adjudged case, all the decisions and the text writers treat it as unquestioned that a debt of the husband before marriage payable in the future, but which may become due during the marriage, is discharged. They expressly distinguish such a debt from one which, by contract before the marriage, is made payable after the death of the husband. In the latter case no obligation is considered as existing during the husband's life, such as could be released by him. Such a debt is in effect a provision for the wife made in contemplation of the marriage. It is such as a court of equity can always protect, and the courts of law have enforced such debts when they were secured by bond, as in *Cage vs. Acton*, 1 *Ld. Raym.* 515 ; *Milbourn vs. Ewart and others*, 5 *T. R.* 521. But in *Cage vs. Acton*, which is the leading case on the subject, it is expressly stated by Justice Gould, who delivered the principal opinion " that by the intermarriage, all con- " tracts for debts due *in præsenti*, or *in futuro*, or upon con- " tingency, which may become due during the coverture, " are extinct ; " and such seems now to be the unques- tioned rule. 2 *Roper on H. & W.*, (76); *Bright on H. & W.* 19.

*Third.* There was another position taken on behalf of the complainant. It was argued that, even conceding the general rule to be applicable to the debt, as one falling due after the husband's death, and that the rule would be in full force at law, yet that the circumstances of the case are sufficient to raise in favor of the wife an equity to have her right to the debt protected by this Court.

An equity of this nature must rest upon one of three grounds, viz : contract, trust or fraud. Most of the cases are those which arise out of contract, that is, out of some

provision made for the wife, either before marriage, and in consideration of it, or it may be after marriage, upon a sufficient consideration to the husband, the provision, in all such cases being secured by the husband's entering into some obligation to the wife. Such was the nature of the case of *Cage vs. Acton*, 1 *Ld. Raym.* 515, and the older cases therein cited from *Hobart* 216 and *Cro. Jac.* 517 ; also of *Milbourn vs. Evart*, 5 *T. R.* 381. In some of the cases the provision being made by a legal security, such as a bond of the husband, it was enforced in the courts of law. A court of equity would enforce such a provision, though not made in a form enforceable at law. In the present case the note of Layton was not given as a provision for the wife, in contemplation of the marriage, but solely for money borrowed by Layton, for Layton's debt without respect to the marriage. The obvious and proper mode of securing to the wife at the time of the marriage, an equity to retain this debt in force was by means of a trust, which was the second class of such equities just referred to. The note might have been assigned to a third person to hold as trustee for the intended wife. Such was the case of *Cotton vs. Cotton*, 2 *Vern.* 290; *Prec. in Ch.* 41 cited in *Roper H. & W.* 32. The other ground of equity referred to is that of fraud. I have met with no such instance, but there can be no doubt that it would be a ground of relief; as if a woman were induced to marry a man under the representation or just expectation that a debt previously held by her against him would remain in force and were thereby prevented from securing it to herself by a trust, a court of equity would protect her. In the present case, Layton's note was not assigned by the wife to a trustee, nor any measure taken to secure it to herself ; nor was she prevented from so doing by any fraud or misrepresentation as to her rights or so far as appears even by ignorance of them. As before stated, the parties left the rule of law to take its course ; and upon the general presumption they must be taken to

have understood and intended the legal consequences of their action. The case does not present the shadow of a ground for this Court to interfere with the legal operation of the marriage.

It only remains to say, briefly, that, inasmuch as by the marriage Layton the husband was discharged from this debt, it results that the defendant, Johnson, is discharged also. It matters not to this effect, whether Johnson was a joint debtor or a surety in the note. The law is too well settled on this point to need more than a reference to it. It may be proper however to add that, as the case stands upon the record, Johnson must be taken to have stood in the relation of surety in the note. For so he states in his answer which on this point is responsive to the bill, and there is no evidence to the contrary.

On the whole I feel obliged, though with reluctance, to dismiss the bill with costs.