Clara J. Williams,

*vs.*

William H. Betts, Administrator of Mary C. Betts, deceased.

*Sussex, June 5, 1916.*

*Rev. Code* 1915, § 4216, passed in 1907, *Act Gen. Assem. March* 14, 1907, (24 *Del. Laws, c.* 243), declaring it lawful for husband or wife to testify for or against each other in both civil or criminal causes, did not remove the bar of the common law, resting on public policy, against testimony of husband or wife as to communications between them based on the marital relation, such as an agreement between husband and wife arising out of their communications for reimbursement for the wife's expenditures on his behalf, in consideration of which he conveyed property to her.

A deed of land from a husband to his wife, stating a money consideration paid by her to him, unless clearly contradicted, was of evidential value to support the wife's claim to an equitable interest in the property and her contention that the deed was made to compensate her for having previously paid his debts from the proceeds of her own property.

At common law, the husband and wife were so nearly one that the husband could not directly convey the legal title to his wife, though equity might uphold such a conveyance after considering the motives, purposes, and good faith of the husband; and, in order to work out an equity, there must be a clear right arising out of matters independent of the deed, as well as some further conveyance or release contemplated, to carry it into effect, as an agreement or obligation, and there can be no presumptions in its favor.

The fact that a wife to whom the husband had conveyed land by a deed reciting a money consideration joined with him in mortgaging it, even if it was done for his benefit, did not operate as a waiver or relinquishment of any right or interest she had in the property.

Where a husband conveyed land to his wife for a stated money consideration and they joined in a mortgage of it which was subsequently foreclosed, leaving a surplus, and the wife claimed the surplus during her husband's life, and the mortgagee, who was fully paid, did not suffer thereby, and there were no rights of creditors of the husband to be considered, and no improper motives shown, a bill by her, after her husband's death, to establish title to the surplus, was not a stale demand, as a wife cannot be held to the same degree of diligence in enforcing rights against her husband as against others but may rely on the marital relationship to establish her rights without resort to law.

STATEMENT OF THE CASE.   William L. Williams by deed duly executed, dated January 22, 1884, conveyed to the complainant, then his wife and now his widow, for the consideration of seven hundred dollars, as stated therein, a tract of land in Sussex County.   In 1908 the complainant and her said husband made a mortgage on the same real estate to William H. Betts, the husband of Mary C. Betts, to secure the payment of six hundred and nine dollars and fifty-one cents, and subsequently in 1912 suit was brought on the mortgage and the mortgaged property was sold for seventeen hundred dollars under a *levari facias*.   After paying the mortgage debt, interest and costs, there remained in the hands of the sheriff nine hundred and sixty-three dollars and forty cents.   The sheriff by petition to the Superior Court stated that the money was claimed by several persons, without naming them, and the court by order allowed him to pay the money into court, and the money is still there.

Afterwards the complainant, Clara J. Williams, her husband being dead, presented a petition claiming the money as the owner of the property sold, and also alleging that the property was conveyed to her by her husband pursuant to a prior agreement whereby she had sold a farm of her own in order to raise money with which to pay some of his then existing debts.  The Superior Court denied the petition because, the grantor and grantee in the deed being husband and wife, the deed was not effectual to convey the legal title, and inasmuch as the sheriff was by law required to pay the surplus to the persons legally entitled thereto, the remedy of the petitioner to enforce her right, which, if she had any, was an equitable one, was in the Court of Chancery.  An opportunity was given for a resort to this court the money being retained to await the result of such suit.   The case in the Superior Court is reported under the title *In re Williams*, 4 *Boyce*, 401, 88 *Alt.* 716.

Afterwards, on January 27, 1914, Clara J. Williams filed a bill in this court against her daughter, Mary C. Betts, the only heir at law of her husband, making substantially the same allegations as stated in the petiton to the Superior Court, and praying this court to adjudge that the fund belonged to the complainant and that the deed to the complainant be declared to be sufficient to vest in her the equitable interest in the property such as entitled her to the fund in question.

A demurrer to the bill having been overruled, the defendant, Mary C. Betts, filed an answer denying that the deed was made pursuant to the agreement alleged in the bill, and alleging that it was in fact made because the grantor had been sued by one Isaac W. James and the deed was made in order to avoid the consequences of that suit in case Williams was defeated.   It was also denied that the money arising from the sale of the complainant's property prior to the making of the deed in question was applied to pay debts of her husband, and further that the complainant knew of the invalidity of the deed to her from her husband.   Afterwards, Mary C. Betts, the defendant, died and William H. Betts, her administrator, was made party defendant.

Testimony was taken before an examiner and exhibits put in evidence, and the cause was duly argued.

*Charles W. Cullen* and *Robert G. Houston*, for the complainant.

*James M. Tunnell*, for the defendant.

THE CHANCELLOR (after stating the foregoing facts). At the taking of testimony objection was made to the competency of the complainant to testify, and her testimony was taken over the ruling of the examiner who sustained the objection thereto. The objection to her competency as a witness was based on the case of *Gray v. Cole*, 5 *Harr.* 418, a decision in 1853, before the statute making husband and wife competent as witnesses was passed. The statute, as found in the *Revised Code of* 1915, *par.* 4216, *p.* 1908, is as follows:

"It shall be lawful for a wife or a husband to testify for or against each other, in both civil or criminal causes in any of the courts of this State."

The act included in the new Code was passed in 1907. 24 *Del. Laws, c.* 243. An earlier act passed in 1891, and not so included, is as follows:

"That it shall and may be lawful for husband and wife to testify in all civil actions in which either or both are or may be parties to the suit." 19 *Del. Laws, c.* 260.

If there is a difference in legal effect between the two statutes, as applied to civil suits, it is not clear that the earlier statute is in effect repealed by the later one. The Code Commissioners evidently thought there was no such difference, because while they printed the later statute they cited the earlier as well as the later statute as authority for the *paragraph* 4216. But even assuming that both statutes are in force, the question is raised whether the old rule as to the competency of married persons to testify as to communications between each other applied.

The old rule was illustrated in the case of *Gray v. Cole*, 5 *Harr.* 418. Personal property of Cole had been levied on and sold in execution and the proceeds paid into court. Gray claimed as Cole's landlord for rent, and the Farmers' Bank claimed as execution creditor of Cole. The widow of Cole was not permitted to testify that she had been informed by her husband that he occupied Gray's house under an agreement to pay rent, it being privileged even after his death. The court said:

"Communications between husband and wife are regarded as confidential and privileged, whenever brought in to charge the husband, either during his life, or his estate after his death. Though the husband, if alive, might charge himself by his own admissions in evidence by himself, or proved by another, policy protects him from such proof by the wife. If the witness has any knowledge of the relation of landlord and tenant, derived from any other source than the husband, she may prove it; but she will not be allowed to disclose the communications of her husband to her."

In the above cited case the wife was not a party and neither was her husband, or his estate, interested, the contest being one between two creditors of the deceased husband for priority of payment, the fund being insufficient to pay both. Even there the old common law rule was applied.

Notwithstanding the Delaware statute permitting either spouse to testify for or against the other, can either be permitted to divulge communications between them based on the marital relations, and as to these does the old rule continue as a rule of policy?

The common law rule apparently made no distinction between the incompetency of one spouse to testify for or against the other as a matter of disability and the incompetency as a matter of privilege. Even where the statute removes incompetency of witnesses arising from interest, it is still generally held that this did not remove the objection as to husband and wife as witnesses for or against each other on the ground of public policy. 6 *Enc. of Evidence*, 853, and many cases cited.

In his valuable philosophical work on evidence, Mr. Wigmore considers elaborately and critically the foundations

of the rule of incompetency of married persons as witnesses, and clearly does not regard it as a disability. See *Wigmore on Evidence, Vol.* 1, § 600 *et seq.,* and *Volume* 3, § 2227 *et seq.*

In the case of *Gray v. Cole,* 5 *Harr.* 418, the court regarded the question as one of privilege and not of disqualification, *i. e.,* a privilege which the husband, or his personal representatve, could invoke and not an exclusion based on public policy. If the rule is one of disability based entirely on the marital relation, then a general statute which makes it lawful for a husband or a wife to testify for or against each other removes the disability; whereas if it is a privilege, then the question is, does the statute remove entirely the bar of the common law rule? If it does not, then a widow in a suit brought by her against one who claims under her husband respecting property which he owned, cannot testify to an agreement between her and her husband respecting such property.

The solicitor for the defendant claims that the rule against the disclosure of marital communications is not changed, and that the agreement between the complainant and her husband is such a communication. He cites 10 *Ency. of Evidence, p.* 168, *par.* 3, *par.* 40, and cases cited. Chamberlayne in a very brief statement takes the same view.

"Statutes removing the disqualification of husband and wife as witnesses against each other, and compelling them to testify, do not affect the exclusion of privileged communications between spouses under the common law rule." 5 *Chamberlayne on Evidence,* § 3700, citing among other cases *Ex parte Beville,* 58 *Fla.* 170, 50 *South.* 685, 27 *L. R. A.* (*N. S.*) 273, 19 *Ann. Cas.* 48; *Mercer v. State,* 40 *Fla.* 216, 24 *South.* 154, 74 *Am. St. Rep.* 135; *Marsh v. Potter,* 30 *Barb.* (*N. Y.*) 506.'

In a note to *Ex parte Beville,* 58 *Fla.* 171, 50 *South.* 685, in 27 *L. R. A.* (*N. S.*) 273, 19 *Ann. Cas.* 48, the annotator says:

"The decisions seem unanimous in holding that statutes removing disabilities between husband and wife as witnesses, which make no express provision as to confidential communications, do not affect the common law rule which rendered them incompetent to testify as to such communications."

There is, therefore, ample authority and reason to enforce the old rule which debars a husband or wife from testifying to any communication between them, though they be competent witnesses to other facts, notwithstanding the statute making it lawful for either to testify for or against each other in any civil or criminal cause. Public policy was the basis of the old rule, for it sought to preserve inviolate the confidence incident to the marital state. The bar of the old rule, whatever else it prohibits, certainly applies to agreements between husband and wife arising from the communications of one to the other. Neither can be permitted or compelled to testify as to such communications, because in Delaware they are privileged. Certainly the rule should not be relaxed to permit either to testify in his or her own behalf after the death of the other as to an agreement made between them respecting property. It is thus expressed by Greenleaf:

"Whatever has come to the knowledge of either by means of the hallowed confidence which that [marital] relation inspires cannot be afterwards divulged as testimony, even though the other party be no longer living."

There is, strange to say, no reported decision on the point in this State.

Therefore, while the complainant is in general competent as a witness, she cannot be permitted to testify in the cause that there was an agreement between her and her husband for reimbursement for her expenditures made on his behalf, as alleged in the bill, for it was a communication between them as and while husband and wife, and so was governed by the ancient rule unaffected in this respect by the enabling statute.

I find, however, that even excluding the testimony of the complainant the evidence shows with sufficient clearness that she had a substantial equitable claim as against her husband which entitles her in this court to have the fund in question. The deed from her husband to her states a consideration of seven hundred dollars paid by the grantee to the grantor, and this in itself, unless clearly contradicted, is of evidential value to support her claim to an equitable interest in the property,

and her contention that the deed was made to compensate her for having before that time paid her husband's debts from the proceeds of the sale of other property which was her own. Her claim is further supported by the testimony of John R. Steele, who by instructions of her husband drew the deed for such purpose. The testimony to the contrary is not convincing. Mr. Steele had the best opportunity to know the facts in this regard, and greater weight is given to his testimony on that account.

But it is urged that the deed was made to protect her husband's property from costs in case he should lose a suit in which he was a defendant. From the record of the court where that suit was brought it appears that it was an action of trespass upon other land and that the summons therein was not served until nearly two months after the date of the deed. Furthermore, the evidence of an intention to protect the grantor's property against the costs consisted of statements of the grantor long after the conveyance and after there was friction between the grantor and the grantee over the refusal of the former to make another deed to his wife. Besides, if the fact be relevant, the judgment in the trespass suit was in favor of the defendants.

There is, then, without referring more particularly to the testimony, satisfactory evidence to show that there was a real consideration and a meritorious purpose in the transaction between the grantor and grantee, and no convincing evidence of an improper purpose.

The Superior Court in the opinion denying the complainant's petition for an order to have this fund paid to her, said:

"Unquestionably, at common law the husband and wife are so nearly one that the husband cannot directly convey the legal title in lands to his wife, but equity may uphold such a conveyance, after considering the motives, purposes and good faith of the husband." *In re Williams*, 4 *Boyce*, 404, 88 *Atl.* 717.

In the case of *Loomis v. Brush*, 36 *Mich.* 40, 46, the court expounded sound principles applicable to a case like the one under consideration, saying:

"It is very well settled that such an instrument is of no more validity as an actual conveyance in equity than at law, and that in order to work out an equity, there must be a clear right arising out of matters independent of the deed, as well as some further conveyance or release compelled, to carry it into effect as an agreement or obligation. If the deed was made under circumstances which would have rendered it proper for equity to compel the husband to carry out a trust in his wife's favor, the only way under the old system would have been to require a sufficient conveyance to trustees if the wife was living, or to the beneficiaries if she was dead. There can be no ground for claiming that a deed absolutely void in law when made is validated as a conveyance by the subsequent law which enable married women to take and enjoy property as if sole. And there can be no pretense that the deed would stand alone either at law or in equity, without an inquiry into the circumstances, to enable the court to determine whether any equity arose concerning it. There are no presumptions in its favor. On its face it is not only legally void, but presumptively voluntary, and contains nothing to indicate that it was given for· any meritorious purpose. While courts will, under peculiar circumstances, carry out a purpose which has failed by reason of the incapacity of the wife to accept a deed from her husband, the case must be plain and the equity manifest."

The fact that in 1908 the complainant joined with her husband in mortgaging the property, even if it were done for his benefit, did not operate as a waiver or relinquishment of any right or interest she had in the property. Nor does it seem important that on several occasions her husband refused to make another deed ·to her through an intermediary, or otherwise protect her rights.

It is urged strenuously that her demand is a stale one and that she has lost ·rights by not enforcing them earlier, and many cases as to the duty of the court to reject delayed demands are cited. But this principle does not apply to this case. At no time did she cease to clamor for her rights during her husband's life, and no one has suffered from her delay; certainly not Mary C. Betts. A wife should not be held to the same degree of diligence in enforcing rights against her husband as against others, for she may rightly rely on marital persuasions and the sacred relationship to bring about a desired result amicably and without resort to the processes of the law. A delay may be creditable to a wife under some circumstances rather than detrimental. There are no rights of creditors of the grantor to

be considered and no improper motives were clearly shown to exist.

In conclusion, then, it seems clear that the complainant is entitled to have paid to her the fund in question, having equitable rights as grantee in a deed to her from her husband, stating a valuable consideration paid by her and based on evidence showing that there was a meritorious purpose in the conveyance enforceable in equity, though the legal title did not pass to her under the deed.

This court has no power to direct a payment of the money to the complainant, but will by order declare her right thereto in order that the Superior Court, which has control of the fund, may do so.

Let a decree be entered accordingly.