ELIZABETH R. GODMAN,

*vs.*

JAMES W. GREER, and others.
In the Matter of Partition of Real Estate of Jemima Walker, deceased.

*New Castle, Nov.* 30, 1918.

A grant or devise of land to man and wife during coverture, without any expressed intention to create any other estate, would vest in them an estate by the entireties; the ancient common law still being the rule in Delaware, despite statutes abolishing joint estates, unless expressly so granted or devised, and despite remedial legislation in favor of married women.

A devise of land to husband and wife, so designated, expressly as tenants in common, gave to the devisees an estate as tenants in common, not an estate by entireties, in view of fact that a married woman is a separate legal entity as to her property rights.

PETITION FOR PARTITION. In a cause in partition there was filed a petition by one not made a party to the cause claiming to have an interest and asking leave to intervene and be a party thereto, based on his interest. The facts are these:

William McCartney by a codicil to his will dated in 1894, probated in 1902, devised land to "Jemima Walker and to her husband, Alexander Walker, and to their heirs and assigns, as tenants in common, to have share and share alike." Alexander Walker died in 1903 intestate, and his wife, Jemima Walker, died in 1914 also intestate. There were no children of the marriage. Alexander Walker left children and grandchildren by a former marriage, and they are his heirs at law. Jemima Walker never

had children, and her heirs at law are issue of her two deceased sisters.

One of the heirs of Jemima Walker filed a petition for partition based on the theory of survivorship of the whole estate in her. Subsequently one of the children of Alexander Walker by a former marriage filed a petition to intervene, claiming for himself and his brothers, sisters, nephews and nieces that his father was seized of an undivided one-half of the property under the devise by William McCartney.

Upon the facts set forth in the original petition for partition and the petition for intervention counsel for the parties were heard.

CURTIS, P. J., and RICE, J., sitting.

*Leonard E. Wales*, for the heirs at law of Jemima Walker.
*William H. Heald*, for the heirs at law of Alexander Walker.

CURTIS, P. J. (delivering the opinion of the Court). There is raised by the petition for partition filed by an heir at law of Jemima Walker, and the petition for intervention by an heir at law of Alexander Walker, a question never before litigated in this State, viz. whether by a devise of land to a man and his wife (and so designated) expressly as tenants in common, the devisees took an estate by the entireties or as tenants in common.

Clearly the words of the will would create a tenancy in common if the devisees had not been husband and wife. It is equally clear that a grant or devise of land to a man and his wife during coverture without any expressed intention to create any other estate would vest in them an estate by the entireties. This was the ancient common-law rule, and it is still the rule in Delaware, notwithstanding the statutes abolishing joint estates, unless expressly so granted or devised, and notwithstanding the remedial legislation in favor of married women. In 1899 Chancellor Nicholson in *Kunz v. Kurtz*, 8 *Del. Ch.* 404, 68 *Atl.* 450, so decided, where, so far as appears, there was a conveyance by deed to a man and woman correctly described as husband and wife, without words of severance of their estates. The Chancellor followed other courts which excluded an estate by the entireties from the operation of statutes against joint estates similar to our

own, for the reason that an estate by entireties is not a joint estate, but a sole tenancy, both ·husband and wife having the whole estate, i. e., *per tout*, and not *per my et per tout*.

In holding that the Married Women's Act (Rev. Code 1915, §§ 3033-3060) did not in effect abolish·estates by entireties, the Chancellor adopted by quotation words of Judge Strong in an early case in Pennsylvania, *Diver v. Diver*, 56 *Pa.* 106, 109, stating the purpose of such remedial legislation to be not to destroy the oneness of husband and wife, but to protect the wife's property by removing it from under the dominion of the husband. The Chancellor also repudiated the reasons given in cases cited to support the contrary views. These cited cases point out that the rule as to entireties is based on the ancient theory that the husband and wife could not have separate and conflicting property rights, and that her existence so far as property was concerned was merged in his.· And it is quite true that that peculiar and anomalous estate had its origin in that legal identity of personality so far as property rights were concerned. At common law the legal existence of the wife was merged in that of her husband. Her legal identity was suspended and held in abeyance during the existence of the marriage relation, and she was little better than a menial to her husband. It is always declared that they could not hold property otherwise than by entireties, because they were one in law, and that one was the husband during coverture, her property rights being his and she being under his dominion. But the courts with which the Chancellor did not agree said in their opinions that inasmuch as a wife had been given rights and powers to acquire, hold, use, enjoy and dispose of property clear of the control of her husband, she had as to property rights acquired a separate entity in the law, and that she and her husband were two separate and independent persons. In *Clark v. Clark*, 56 *N. H.* 105, the Court said:

"The existence of a married woman, so far as her property is concerned, is no longer by our law merged in that of her husband, but she has become a separate being endowed, so far as her separate estate is concerned, with the power and subjected to the liabilities of an unmarried woman."

They and many other courts both in cases not cited to the Chancellor, and those which have since been decided, were ir-

resistibly driven to the conclusion that as the reason for the rule, always recognized as based on a legal fiction and as a product of legal subtlety, had ceased the rule itself had no foundation on which to stand.

This view is found in *Robinson, Appellant*, 88 *Me.* 17, 22, 33 *Atl.* 652, 30 *L. R. A.* 331, 51 *Am. St. Rep.* 367, where the Court showed by its reasoning, as Chancellor Nicholson admitted, some familiarity with the common law of real property. Still in the Delaware case the Chancellor found that the overwhelming weight of American authority, "amounting almost to unanimity" was opposed to giving full effect to the emancipating statutes. It should be noted, however, that of the cases mentioned in the opinion as sustaining it none were cases of a devise or conveyance to a husband and wife expressly as tenants in common. In the Massachusetts case the Married Women's Act was not considered. In Pennsylvania and New York, and perhaps elsewhere, the later cases validate a devise to a husband and wife as tenants in common, and in the case cited from Arkansas the Court said the common-law rule would not be extended to a devise to a man and his wife expressly as joint tenants.

Perhaps the Chancellor was right upon the authorities as they then were. But however overwhelming the mass of decision (if there be such) a good reason is of more weight than a multiplicity of adjudications. We cannot accept his conclusions as to the effect of the Married Women's Acts upon the questions. *Stare decisis* is a principle of great importance; but it does not require the extension to new facts of a rule of law which though ancient is now without the reasons which gave it vitality. We are unwilling to be bound by that case in deciding this new question, though quite frankly we do not see that there is any difference in principle between the two. The ancient rule is not based on intention, but upon a legal fiction. It should operate upon a devise as well as a grant. Likewise it should operate independent of a testamentary intention to the contrary, such as is clearly expressed in the present case, and if applied here will defeat such clear intent as ruthlessly as do some other fixed principles. So far as concerns a separate grant of land to a man and woman during coverture, that case may still stand as authority that they take by entireties,

according to the common law, though it does not meet our approval. But where clear words are used in a will proper to create in persons other than a man and his wife an estate in common, we shall hold it to be such when the devise is to husband and wife during coverture.

In brief, the rights which a married woman has during coverture as tenant in common with her husband of land would be these: By will she may dispose of her undivided estate without the consent of her husband, but subject to his rights if he survive her. Rev. Code, § 3050, p. 1426. She may prosecute and defend suits for the presentation and protection of her own property, and make contracts concerning it as if unmarried. Rev. Code, § 3052, p. 1427. But she could not at law maintain an action against her husband, or be sued by him. *Masten v. Herring,* 6 *Pennewill,* 282, 66 *Atl.* 368 (1907), affirmed by the Supreme Court as shown by a note to the case as reported. In the Court of Chancery the rights of a husband and wife against each other may under some circumstances be enforced. *Fox v. Johnson,* 4 *Del. Ch.* 580; *Rambo v. Rumer,* 4 *Del. Ch.* 9, and note thereto on page 19; *Hood v. Jones,* 5 *Del. Ch.* 77; *Spruance v. Equitable Trust Co., ante p.* 12, 103 *Atl.* 577. If she and her husband were the only tenants in common of the land, then probably she could not maintain a partition cause in the Orphans' Court under the statutory proceeding, but probably could maintain a suit in equity for partition, for partition was anciently and still is part of the original jurisdiction of Courts of Chancery where they are not deprived thereof by statute giving exclusive jurisdiction to other courts. *Bradford v. Robinson,* 7 *Houst.* 29, 30 *Atl.* 670.

A deed concerning her land executed by her alone would be valid and effectual as if she were sole. Rev. Code, § 3200, p. 1483. But a deed from her to her husband would be void. *In re Williams,* 4 *Boyce,* 401, 88 *Atl.* 716; *Williams v. Betts,* 11 *Del. Ch.* 128, 98 *Atl.* 371. As tenant in common she would be entitled to her share of the rents and could recover from the tenant by suit in her own name her share thereof to the same extent that any other tenant in common could.

As appears above, in Delaware the common law disabilities of a married woman during coverture have not all been removed

to the extent which they have elsewhere; for in some states there are no such legal disabilities, the woman being as free in every respect to acquire, hold, use, sell and dispose of property as though a *feme sole,* and with no control, or powers, or rights in the husband to interfere with her.

Such disabilities as remain are not so important as to make it useless or unadvantageous to her to be a tenant in common with her husband of land, but on the contrary it is of advantage to her, and the hindrances to her full use and disposition of her undivided interest are not really serious. She would only lose the chance of acquiring title to the whole by survivorship, which, as has been said, is ordinarily a poor compensation for the loss of her husband, and any right which is ineffective until his death is not ordinarily compensation for his death. Few, if any, women would choose that kind of an estate, if any other were available to her. There is, therefore, no sufficient reason why from the point of view of advantage to her a devise to her and her husband as tenants in common shall not be carried out according to the testamentary intention, but on the contrary it would be to her distinct advantage. This point is made because some of the cases considered an estate by entireties more advantageous to her, as perhaps they were when her marital rights were meager.

The reasons for our conclusions are these:

(1) In this State a married woman during coverture is as to her property rights a separate legal entity, capable of acquiring, holding and disposing of property, and largely free of the dominion of her husband.

(2) It is not and never has been the law that the marital relation is a bar to a tenancy in common. If two persons then owning land as tenants in common marry, they continue as tenants in common. This always was the law. Since the enabling acts for women, if during coverture each of the spouses acquire by separate conveyances from the same grantor undivided interests in the same land, they take and hold it as tenants in common. There is no real logic in a rule which holds that a man and his wife during coverture can each take undivided interests in land as tenants in common from the same person by separate deeds, but cannot do so by a single deed to the two of them.

(3) A clear testamentary intention should be made effective. Presumably the testator knew the extent and limitations on the rights of a married woman as tenant in common with her husband, and with·this knowledge intended she should have the undivided interest in the land, notwithstanding and perhaps because of these limitations to her disposition thereof, and her only partial emancipation from the ancient dominion of her husband. If there be no good reason to the contrary, she should have from the testator whatever rights the law permitted to her, for this presumably was the wish of the testator. This is but a corollary to the principle that if during coverture a husband and wife take title to land by deed without words appropriate to convey a different estate, they and thé grantor meant that they take by entireties.

(4) Estates by entireties were based on the complete marital unity, the husband being that unit. When that unity is dissolved as to property rights even in part the effect upon the question now considered is the same as if that unity were fully dissolved. If under legislation a married woman has any rights of substantial importance to her property, she may be a tenant in common if proper words be used to make her so, in order that she might enjoy those rights however limited their scope.

There is ample well reasoned authority to support our views. Amid the mass of decisions respecting estates by the entireties it is now quite impossible either to reconcile them, or to estimate the weight of authority for one view as against the other. Besides, there is a variety of legislation which makes the subject even more complex. Sound reasoning is a better guide than the weight of authority, where there is diversity.

In Maine, Pennsylvania, North Carolina, New Jersey, Indiana, New York, Maryland, United States Supreme Court and perhaps elsewhere, there are decisions on the point in question.

In *Robinson, Appellant,* 88 *Me.* 17, 33 *Atl.* 652, 30 *L. R. A.* 331, 51 *Am. St. Rep.* 367 (1895), there was a devise to a husband and wife in words which would create a tenancy in common if the devisees had not been married. In Maine prior to 1844 estates by entireties had been enforced as at common law, but not since the Act of that year giving to married women about the same property rights as they now have in Delaware. It was held

by the Supreme Court that the devisees took as tenants in common. The Court found that the old estate had its origin in the marital relation, and was founded on the legal fiction of the absolute oneness of the husband and wife.

"In contemplation of the law they are no longer one person, and their interests in property are no longer identical but separate and independent. * * * The rule of the common law creating estates by entirety is irreconcilable with both the letter and the spirit of these statutes. It never rested upon a rational or substantial groundwork. It had its origin in feudal institutions and social conditions which were superseded centuries ago by the more enlightened principles of a progressive civilization. It is now repugnant to the American idea of the enjoyment and devolution of property and to the true theory of the marriage relation. * * * The fictitious basis of this rule having been removed the rule itself must fail. To declare that there is no authority in the court to effectuate a clearly expressed and unmistakable intention of a grantor or testator, against such an antiquated and exploded dogma, would be a poor tribute to the creative power of the law and the original conceptions of justice in modern courts."

The decisions in Pennsylvania are not consistent. In 1856 in *Stuckey v. Keefe*, 26 *Pa.* 397, a conveyance to a husband and wife as "tenants in common and not as joint tenants" was held to vest an estate by the entireties, ignoring the intention of the parties, and basing the conclusion on ancient rules as to the impotence of a married woman during coverture as to property. This decision was made before the statutes respecting married women. In *Young's Estate*, 166 *Pa.* 645, 31 *Atl.* 373, and in *Merritt v. Whitlock*, 200 *Pa.* 50, 49 *Atl.* 786, and perhaps other cases, the courts of that state in a half hearted way declared that the marital unity as to property did not exist there since these enabling statutes. But in the latest case there, *Blease v. Anderson*, 241 *Pa.* 198, 88 *Atl.* 365 (1913), the Court in unmistakable terms made effectual a conveyance to a husband and wife of separate undivided shares of land, and declared that each took an undivided estate. At page 203 of 241 *Pa.*, at page 366 of 88 *Atl.* after citing many Pennsylvania cases, the Court set at rest the prior wavering declarations by saying this:

· · "While we have said more than once that the Married Women's Property Acts do not abolish or affect estates by entireties *Meyer's Estate*, 232 *Pa.* 89 [81 *Atl.* 145, 36 *L. R. A.* (*N. S.*) 205, *Ann. Cas.* 1912C, 1240]; *Beihl v. Martin*, 236 *Pa.* 519 [84 *Atl.* 953, 42 *L. R. A.* (*N. S.*) 555], where the grant expressly

or in effect creates such an estate, yet at no time since the recent legislation conferring full competency upon married women to take and hold real estate as their individual property have we ruled that a conveyance to husband and wife granting distinctly defined, undivided 'parts or individual estates to each must be construed to create an estate by entireties notwithstanding the expressed intention of the grantor to the contrary; far from so holding, all our decisions upon the subject point in the other direction."

According to *Isley v. Sellars*, 153 *N. C.* 374, 69 *S. E.* 279, an intention shown in a deed that a husband and wife should take as tenants in common will prevail, the Court saying:

"Such has been the rule from an early period in the history of the English law."

Later cases in North Carolina to the same effect are, *Highsmith v. Page*, 158 *N. C.* 226, 73 *S. E.* 998; *Eason v. Eason*, 159. *N. C.* 539, 75 *S. E.* 797.

In *Fulper v. Fulper*, 54 *N. J. Eq.* 431, 34 *Atl.* 1063, 32 *L. R. A.* 701, 55 *Am. St. Rep.* 590 (1896), the Court expressly held that where land was conveyed to a man and his wife "as tenants in common," they will take and hold as tenants in common and not by entireties. The Court relied largely on *McDermott v. French*, 15 *N. J. Eq.* 78, and said it should be adhered to because it had been accepted as correct for thirty-four years. The Court disposed of the basis of a contrary decision in *Stuckey v. Keefe's Ex'r.*, which rested on the ground that there were certain incidents to a tenancy in common which could not exist in an estate held by husband and wife. The New Jersey Court considered that none of these incidents justify the conclusion that the husband and wife cannot hold as tenants in common. As to the unity of husband and wife, the Court said:

"It is a mistake to suppose that there is anything in the theoretic unity of husband and wife which prevents them from being able to hold moieties of the same estate. It has always been held that if a man and woman become possessed of an estate as joint tenants, or as tenants in common, and afterwards marry, they still retain their moieties after marriage, and continue to hold as joint tenants or tenants in common. *Co. Litt.* 187*b*; 1 *Preston Estates,*. 434; 3 *Washb. Real Prop.* 425, and cases cited. There .being nothing in the marriage relation which prevents those who were tenants in common before marriage from remaining such after marriage, it would seem to follow necessarily that there is nothing in that relationship which would prevent a husband

and wife from taking such an estate after marriage, provided it clearly appeared, from the deed or devise under which they took, that such was the intention."

This case was cited with approval in *Aubry v. Schneider*, 69 *N. J. Eq.* 629, 60 *Atl.* 929.

The case of *Richards v. Richards*, 60 *Ind. App.* 34, 110 *N. E.* 103 which is probably the latest case in Indiana, refers to and follows earlier cases in Indiana sustaining the general proposition as to clear intention for tenants in common instead of entireties.

In New York two Vice Chancellors reached different conclusions as to the effect of words in the conveyance showing intention to create a tenancy in common. In *Dias v. Glover*, *Hoffman's Ch.* (*N. Y.*) 71 (in 1839), the words were held ineffective, while in *Hicks v. Cochran*, 4 *Edw. Ch.* (*N. Y.*) 107 (1843), the contrary was held. Later in *Miner v. Brown*, 133 *N. Y.* 308, 31 *N. E.* 24 (1892), the law was settled in favor of the effectiveness of a devise to a man and his wife as tenants in common, though strange to say *Dias v. Glover* was not cited by the court or counsel. At page 312 of 133 *N. Y.*, at page 25 of 31 *N. E.*, it was said as to the marital unity:

"It was merely a legal fiction which still survives in a form greatly abridged by modern legislation, and its application was frequently the cause of much hardship and great injustice. We, therefore, find a disposition manifested at a very early period in the history of English law, to limit its extension and to hold that a husband and wife may, by express words, be made joint tenants, or tenants in common by a gift or conveyance to them during coverture, and that every grant to them is to have just such effect in respect to the estate which they take, as was intended to be created."

In *Hunt v. Blackburn*, 128 *U. S.* 464, 9 *Sup. Ct.* 125, 32 *L. Ed.* 488 (1888), a married woman bought an undivided one-half interest in land, and later her husband bought the other interest, and later a deed was made to the two as tenants in common. The Supreme Court held that inasmuch as the Court in Arkansas, where the land was, by its decisions must have recognized the holding by moieties, it was binding on the Supreme Court. However, on the authority of text books and *McDermott v. French*, 15 *N. J. Eq.* 78, the Supreme Court arrived at the same view, though the law of Arkansas governed.

In Maryland, in *Fladung v. Rose*, 58 *Md.* 13 (1881), the Court took the view that by a conveyance or devise to a man and his wife during coverture the common-law rule prevailed, because such was the intention, following *Marburg v. Cole*, 49 *Md.* 402, 33 *Am. Rep.* 266, but approved of Mr. Preston's view of the character of the marital relation, and decided that a deed to them "as joint tenants and not as tenants in common" vested title in them as joint tenants and not as tenants by the entireties, the effect of the Married Women's Acts being to free the wife from the common law incapacity to so take land with her husband.

There a few cases which hold a contrary view, and it is not necessary to review them.

Probably the case fullest of citations of decisions and writers bearing on the effect of the enabling acts on the estate by entireties is the case of *Baker v. Stewart*, 40 *Kan.* 442, 19 *Pac.* 904, 2 *L. R. A.* 434, 10 *Am. St. Rep.* 213 (1888), and probably the fullest note is that in 30 *L. R. A.* 305.

Being largely a philosophical question, the extra judicial opinions of learned writers are surely of great value in clarifying one's conclusions in groping for the reasons for principles of law other than those of statutory origin. As was said in notes to 2 *Blackstone's Commentaries*, *182:

"There are great opinions in favor of the position that husband and wife may by express words be made tenants in common by gift to them during coverture."

Nearly a century ago in his *Treatise on Estates*, Preston at pages 131 and 132, after stating that the estate by entireties was based on the unity of two persons while husband and wife, said:

"In point of fact, and agreeable to natural reasons free from artificial deductions, the husband and wife are distinct and individual persons, and accordingly when lands are granted to them as tenants in common, thereby treating them without respect to their social union, they will hold by moieties as other distinct and individual persons would do."

This declaration, be it noted, was made before the liberating statutes, and are so much the more weighty on that account. That learned author's statement has been quoted evidently with approval by Chancellor Kent in his Commentaries, *vol. 4 p.* 363; *Washburn on Real Property*, 674; *Bishop on the Law of Married*

*Women*, § 616; *Freeman on Cotenancy and Partition*, §62. It has been criticized as being without judicial authority, but it has now been engrafted into the law by its general adoption by courts.

Both on reason and authority, then, a devise of land to two persons then married as tenants in common by express words makes them tenants in common and not tenants by the entireties. Therefore, the heirs at law of Alexander Walker are together entitled to an undivided one-half share of the real estate devised to him and his wife, Jemima Walker.

No decree for partition can be made in the pending cause until the heirs at law of Alexander Walker are made parties thereto by amendment, or otherwise, and unless amended the petition for partition will be dismissed.